## THE PEOPLE *against* DUNLAP.

THIS was an action of debt on an administration bond against the defendant, as surety. The declaration stated that the defendant, together with *Anne Dunlap* and *William Harrowell,* did, on the 8th of *February,* 1798, by his certain writing obligatory, acknowledge himself bound to the people of the state of *New-York,* in the sum of 550 dollars ; the condition of which bond was, among other things, that if the said *Anne Dunlap,* administratrix of *Samuel Dunlap,* deceased, did make, or cause to be made, a true and perfect inventory of all and singular the goods, chattels, and credits of the deceased, and exhibit, or cause it to be exhibited, into the office of the surrogate of the county of *Montgomery,* at or before the expiration of six months, from the date of the bond, and the goods, chattels, and credits of the deceased should well and truly administer according to law, and should, when requested, make, or cause to be made, a just and true account of administration, then the obligation to be void. The breaches assigned were, that *Anne Dunlap* had not made an inventory and exhibited the same within six months, into the office of the surrogate, and had not well and truly administered, according to law, the goods, &c. of the deceased, but that goods, chattels, and sums of money of the deceased, to a large amount, to wit, the amount of 500 dollars, had come into her hands, which she had converted and disposed of to her own private use and benefit, and had neglected and refused to pay the just debts of the deceased, and particularly a judgment obtained against the administratrix, in favour of one *Samuel Dickson,* as hereinafter mentioned. And the plaintiff assigned for further breach, that the intestate being indebted to *Samuel Dickson,* in the sum of 100 dollars, brought an action against the administratrix in the court of common pleas of *Montgomery* county, wherein the defendant pleaded *plene administravit,* and on the trial in that court, in *January* term, 1813, a judgment was given in favour of the plaintiff, for 53 dollars and 78 cents, to be levied of the goods and chattels which were of the intestate at the time of his death, in the hands of his administratrix, to be administered : on which judgment a *fi. fa.* was issued to the

*In an action against the surety on an administration bond, it is sufficient for the plaintiff to state that goods, chattels, and sums of money of the deceased, to a large amount, to wit, the amount of, &c., had come into the hands of the administratrix, which she had converted and disposed of to her own use, &c., the creditor not being presumed to know precisely what goods, &c. the administratrix had, and this fact lying more properly in the knowledge of the defendant.*

*The non payment of a judgment obtained against the administratrix may be assigned as a breach of the condition of such a bond.*

*The surety in an administration bond is liable for a mal-administration of the effects of the deceased, and the condition of the bond is not to be restricted merely to the exhibiting of an inventory within six months from the date, into the office of the surrogate of the county.*

*And such bond may be put in suit against the sureties at the instance, and for the benefit of, a creditor.*

NEW YORK,
October, 1816.

THE PEOPLE
v.
DUNLAP.

sheriff of *Montgomery*, to levy of the goods and chattels of the intestate, which was returned *nulla bona*; and the plaintiffs averred that that judgment remained unsatisfied, and that divers goods and chattels of the intestate came into the hands of the administratrix more than sufficient to satisfy the judgment, to wit, of the value of 500 dollars, yet the administratrix did not well and truly administer the same, and did not pay the judgment of *Dickson* with the avails of the goods, &c., but converted the same to her own use.

The defendant, having craved oyer of the condition of the bond, and set it forth, pleaded as to the breach for not exhibiting an inventory within six months, that an inventory had been made and exhibited; and as to the other matters in the declaration contained, specially assigned for causes of demurrer, that it did not appear by the declaration that the defendant had ever been cited to render an account of her administration before the surrogate of *Montgomery*, or the court of probates; and that the declaration did not state, with sufficient certainty, wherein the defendant had neglected to administer, and that the plaintiffs had alleged the non-payment of the judgment in the declaration mentioned, as one of the breaches of the condition of the bond.

The plaintiffs replied, taking issue on the defendant's plea, and joined in demurrer.

*C. M. Lee*, in support of the demurrer, contended, 1. That the assignment of the breach, as to the converting of goods and chattels, &c. by the administrator to his own use, amounting to 500 dollars, &c., was too general and indefinite for the defendant to take issue thereon. The nature and kind of goods, &c., ought to have been particularly specified.*

* Cro. Eliz. 337.
2 Lev. 179, 195.
2 Ventris, 174.
262.  2 Saund.
379.

2. That the non-payment of the judgment debt to *Samuel Dickson* was improperly assigned as a breach. The payment of debts is no part of the condition of the bond, which is merely for a due delivery to the surrogate of a true inventory or account.†

† Toller's Law of
Exec'rs. 495, 496.
Comyn's Dig.
Adm. . (C. 3.)
Lutw. 882.  1
Salk.  316.  4
Burns' Eccl. L.
428.  430.  443
Comp.  140.  3
Atk. 248.

3. That a *devastavit* cannot be assigned as breach of the bond.

*Talcot*, contra, insisted, that if there was any defect in the assignment of the first breach, it was matter of form, and ought to be taken advantage of by a special demurrer. What goods or chattels have been taken and applied to his own use, must

be known to the defendant, but the plaintiff or relator cannot be supposed to have that knowledge.*

As to the other objections; it is true, that Lord *Holt*, in the case of the *Archbishop of Canterbury* v. *Wills*,† said, that the creditor shall not take an assignment of the bond, and assign for a breach the non-payment of a debt to him, or a *devastavit*; and that the words " well and truly administer," are to be construed the bringing in the account by the administrator. This is the case relied on by *Toller*, and is referred to in *Bacon's Abr.*‡ as deciding merely that executors are not, of themselves, bound to take notice of debts. In the case in *Lutwyche*, of the *Archbishop of Cant.* v. *Brown*, there was a demurrer to the replication; and the report of the case contains nothing but the pleadings, with a note, that judgment was given for the plaintiff, which was afterwards reversed in the exchequer chamber, on the ground that the non-payment of a debt was not a breach within the condition of the bond. There is no discussion of the law on the subject.

In the case of the *People* v. *Pease*,§ which was an action on an administration bond, the breach assigned was a *devastavit*, and the objection that such a breach could not be assigned, appears never to have been made. In the courts of other states, where actions have been brought on similar bonds, for the benefit of creditors, no doubt has been entertained that the suit would lie in case of a *devastavit*.‖

*Lee*, in reply, said, that as to the cases decided in the courts of other states, it did not appear that they had similar statutes on the subject. Our statute (1 *N. R. L.* 444. 448. *sess.* 36 *ch.* 79. *s.* 11, 12.) gives another and effectual remedy. The judge of the court of probate, or surrogate, has power to call administrators to account, and to compel them to settle and make distribution of the intestate's estate; and in case of neglect, or refusal to perform what is required of them, they may be imprisoned. In the state of *Massachusetts*, a creditor was expressly authorized, by statute, to bring an action on the bond, in such case.

SPENCER, J., delivered the opinion of the court.

The defendant's counsel have made three objections to the declaration,

VOL. XIII.          3 K

---

NEW YORK,
October, 1816.

THE PEOPLE
v.
DUNLAP.

* *P. M. G. of U. States v.Cochran,* 2 *Johns. Rep.*413.
† 1 *Salk.* 315, 316.

‡ 2 *Bac. r. old Ab*

§ 2 *Johns. Cases,* 376.

‖ 1 *Wash.Rep* 31. 9 *Mass. Rep.* 114. *per Sewell J. Id.* 119. 370. 1 *Bay s Rep.* 328.

NEWYORK,
October, 1816.

THE PEOPLE
v.
DUNLAP.

1. That the breach, in stating that goods, chattels, and credits of the deceased, to the value of 500 dollars, have come to the hands and possession of the administratrix, is bad, in not setting forth the kind of goods specially;

2. That the non-payment of the judgment cannot be assigned as a breach of the condition, and,

3. That no action can be maintained for not duly administering the goods and chattels of the intestate.

As to the first point; in trespass or trover it is necessary, undoubtedly, to state, with sufficient certainty, the goods taken, or converted; but in these cases, the plaintiff is presumed to know his own goods, and the particulars of those for which he sues. In the present case, the plaintiff is not to be presumed to have knowledge of the goods, chattels, and credits, of the intestate. In looking into precedents* of replications to the plea of *plene administravit,* I have not met with an instance in which the goods are specially mentioned. They are all general, " that the executor or administrator had divers goods and chattels which were of the deceased, at the time of his death, in the hands of the representative to be administered, of great value, to wit," &c. There is no reason why a declaration founded on the mal-administration of the administrator should be more special than a replication to a plea of *plene administravit.* I consider the true reason why the amount need no tbe precise to be, that the creditor, not being presumed to know precisely what goods and chattels the executor or administrator had, may state, generally, that he had them of great value; the fact alleged lying more properly in the knowledge of the defendant than the plaintiff.†

The second point does not strike me with any force; I think it proper to state in the breach, the debt actually unpaid, and for which the suit is brought. No reason has been assigned against this, and its propriety is manifest: the judgment sets forth ascertains the debt in a conclusive manner, and the sheriff's return of *nulla bona* on the execution, is evidence that there were no goods or chattels of the intestate, out of which the same could be satisfied.

As to the third point, Lord *Holt* is made to say, in the case of the *Archbishop* of *Canterbury* v. *Wills,* (1 *Salk.* 316,) that though, by the words of the condition, the administrator is to administer well and truly; that shall be construed in bringing his ac-

*2 *Chitty,* 609.

†8 *East's Rep.*
85. 8 *Term Rep.*
459.    2 *Saund.*
411. *in notis.*

count, and not in paying the debts of the intestate, and, therefore, a creditor shall not take an assignment of the bond, and sue it, and assign for a breach, the non-payment of a debt to him, or a *devastavit* committed by the administrator, for that would be needless and infinite. This case is referred to by the elementary writers, almost exclusively, to maintain the proposition that a creditor of the intestate cannot cause the administration bond to be put in suit for not well and truly administering. I do not believe that to be the law now, even in England. In the case of the *Archbishop of Canterbury* v. *House*, (*Cowp.* 140.,) a suit was brought upon such a bond, at the instance of a creditor, and by the consent of the archbishop, and the very point was taken, on a motion to stay proceedings, that he could not authorize a creditor to put the bond in suit, but only the next of kin. Lord *Mansfield*, after stating the condition of the bond, and that it was agreed that the ordinary might permit his name to be used at the instance of the next of kin, says, " in like manner, if such application is made by a creditor, I see no reason why he should not have the same privilege ; and I know of no authority which says that the ordinary cannot empower him to put the bond in suit ; it is *ex debito justitiæ* that he ought to do so ; for though a creditor has no concern in the latter part of the condition, namely, the distribution of the surplus money among the next of kin, yet he is most materially and principally interested in the administrator's delivering in a true inventory, and in the due administration of the effects ;" and all the judges concurred in refusing the motion. In the case of *Greenside & others* v. *Benson & others*, (*3 Atk.* 248.,) Lord *Hardwicke* sanctioned a writ and judgment upon a bond of administration, at the instance of a creditor, and made it the basis of his decree. Our statute (1 *N. R. L.* 447. s. 10.) requires the judge of probate, and the surrogates, upon granting administration, except in certain specified cases, to take of the person to whom administration shall be granted, *sufficient bonds* to the people of this state, with two or more competent sureties, in such penalty as such judge or surrogate shall think reasonable, *respect being had to the value of the estate.* The condition prescribed is, among other things, *well and truly to administer, according to law, the goods, chattels, and credits, of the deceased ;* the same section provides, in case the bond shall become forfeited, that it shall be lawful for the judge of probate, or surrogates granting admi-

NEWYORK,  nistration, to cause the same to be prosecuted, *at the request of*
October, 1816.  *the party grieved by such forfeiture.*

THE PEOPLE      The question recurs, what is a forfeiture of the bond? Most
   v.           certainly an unfaithful administration of the estate of the intes-
DUNLAP.         tate, in not applying the goods, chattels, and credits of the de-
ceased to the payment of his debts ; the law enjoins it on an
executor or administrator to collect the estate of the testator or
intestate, to convert it into money, to pay the funeral expenses
first, then the debts he owed, and then legacies; after which, in
case of intestacy, the residue is to be distributed among the next
of kin, according to the statute. A conversion of the effects of the
intestate to the private use of the administrator, leaving the
debts unpaid, is a violation of the trust reposed in the adminis-
trator, and a breach of the condition of the bond, in not admi-
nistering the goods, chattels, and credits, according to law.
And we have seen that the judge of probate, or surrogate, in
case the bond becomes forfeited, may, at the request of the
party aggrieved, cause the bond to be prosecuted; and a creditor
of the intestate is a party emphatically aggrieved by a mal-ad-
ministration of the estate, by which he has lost the means of
getting his debt paid. How it could ever have entered the
mind of any person, that the condition of such a bond was
satisfied by merely exhibiting an inventory within six months,
is to me very extraordinary.

    The penalty of the bond, and the sufficiency of the sureties,
are to be taken in reference to the value of the estate of the in-
testate, and it is made a distinct and substantive part of the con-
dition, that the estate, thus committed to the administrator, shall
be administered according to law ; and, undoubtedly, one of the
primary objects of the legislature, in authorizing the granting of
administration, and taking a bond, was to secure the payment of
debts due the intestate. And yet, we are told, the condition
is performed by the mere act of exhibiting an inventory, so far
as respects the sureties. It is true, the surrogate has power to
call the administrator to account, and to make distribution, after
the debts, funeral charges, and all expenses, are first allowed,
and he may coerce obedience by imprisonment; but the sur-
rogate has no jurisdiction over the sureties in any other way
than by directing their bond to be sued. All this is no satisfac-
tion of a creditor's debt, and in case of the wasting the estate, and
the insolvency of the administrator, the creditor is remediless,

unless he can obtain a remedy on the bond against the sureties. NEWYORK, I have not the least doubt but that, upon a just construction of the condition of the bond, in reference to the requisition of the statute, as to the manner of taking it, and the authority to cause it to be sued at the request of the party aggrieved, the sureties are answerable for the wasting of the estate by the administrator, and the non-payment of the debts of the intestate, if there be assets.

Were it necessary to cite authorities in support of this construction, it will be seen that my view of the case is sanctioned by the cases in 9 *Mass. Rep.* 117. and in 1 *Wash. Rep.* 31.

The plaintiff must have judgment on the demurrer.

Judgment for the plaintiff.