Dickerson *v.* Robinson et al.

---

MAHLON DICKERSON, Ordinary, &c. *against* ANN ROBINSON, HENRY FREAS, ROBERT VAN MATER, and HOWELL POWELL.

1. The power of administrators is joint only, they must sue and be sued jointly, appear and plead jointly; they cannot plead severally as executors may: and judgment against them must be in their joint capacity.

2. The non-payment of a void judgment cannot be assigned as the breach of the condition of the administration bond, in order to subject them or their sureties, to the payment of it.

3. A creditor cannot sue an administration bond, and assign for breach of the condition thereof, the non-payment of a debt upon a demand *in pais;* nor even upon a judgment at common law, and a *devastavit* upon it.

4. But he may sue an administration bond in order to obtain a complete and perfect inventory. And he may assign as a breach, the not rendering a true and perfect inventory of the estate of the intestate; but he cannot sue the bond and get judgment upon it for his own individual debt.

5. If the administrator made a *final* settlement in the Orphans' Court, and a confirmatory decree of said court was passed upon it, then the balance found in the hands of the administrator, is a surplus, to be distributed according to the statute. But there can be no such final settlement until all the debts known, exhibited and allowed, are paid. But if the settlement was not such *final settlement,* then the creditor may assign for breach of the condition, the not making a true and just account of the administration.

---

The facts of this case sufficiently appear in the opinions delivered.

*Kinsey* for plaintiffs. *Jeffers* for defendants.

KIRKPATRICK, C. J.    This is a case settled by the parties, and has been twice argued.    The facts stated are these, that is to say :

1. Nov. 3, 1807, Ann Robinson and Henry Freas, having been appointed administrators of Samuel Robinson, deceased, together with Robert Van Mater and Howell Powell, as their sureties, executed this bond to the Ordinary in the penal sum of ten thousand dollars, conditioned for the due administration of the estate in the usual form.

2. March 11, 1807, Samuel Robinson, the intestate, and Joseph Robinson, had give their joint and several bond to Ebenezer Gaskill and John Jones, in the penalty of one thousand dollars, conditioned for the payment of five hundred dollars, with interest.

3. In December term, 1819, Ann Robinson and Henry Freas made a settlement of their accounts, as administrators, in the Orphans' Court of the county of Salem, upon which there was found in their hands, the sum of $2,378.59.

4. In March term, 1812, Henry Freas settled his separate account of the said administration in the same court, upon which it was found that there was due to him from the said estate, the sum of $440.19.    It is supposed this is his account of the balance found in the hands of the administrators on the settlement of 1807.

5. In September term, 1815, John Jones, who had survived Ezekiel Gaskill, having first demanded the payment of his bond from the said administrators, and the same having been refused, and having thereupon prosecuted his suit for the recovery thereof, obtained a judgment in the same court against the said Ann Robinson and Henry Freas, as administrators as aforesaid, for the sum of $382.93.    This judgment was obtained and entered in this wise, that is to say, the action was commenced by summons, upon which, Henry Freas, was returned *summoned*, and Ann Robinson, *non est inventus*.    Henry Freas pleaded separately for himself, *plene administravit*, and by the jury it was found for him, and the

Dickerson *v.* Robinson et al.

sum due to the plaintiff upon his bond, was found to be $382.93, upon which judgment was entered against him, Freas, of goods *quando acciderint,* and against Ann Robinson, who had neither been summoned nor appeared, of the goods of the intestate *si, et si non tunc, &c.,* the costs of her own proper goods. Execution was duly issued upon this judgment against Ann Robinson, and returned *nulla, &c.*

6. Then this action is brought by Jones, by the permission of the Ordinary, upon the administration bond, to recover the amount of this judgment; and the only breach assigned, to which the facts admitted have any relation, is, that the said administrators have not paid the said judgment.

Upon this case I observe, that the course of proceeding has been altogether misconceived, for

1. In the first place, though it is well settled that co-executors are not liable for the waste of each other, and that, therefore, each may plead separately and specially to shew this matter and to exonerate himself, yet it is not so with co-administrators; their power is joint only, and not joint and several, like that of co-executors; they must act jointly, they must sue and be sued jointly, they must appear and plead jointly; or if one only be summoned, and the other returned *non est inventus,* he that is summoned may, and indeed must, by statute, plead for both, but the plea must be joint, and, therefore, the judgment for or against them, must be their joint capacity. The waste of one is the waste of all, so far at least as relates to creditors and next of kin; their remedies against one another is a different thing.

It has been insisted, with some degree of zeal, in the argument, that though this may be the ancient principle contained in the books, yet that principle is altered by our act of March 2, 1795, entitled "an act concerning executors, and the administration and distribution of intestate's estates." In the eighth section of that act it is said, "that all administrators, of whatever kind or description they may be, shall have actions to recover, as executors, the debts due to the

person deceased, and shall answer to others, to whom such deceased person was holden or bound, in the same manner as executors shall answer, and shall be accountable, as executors be in case of testament, as well of the time past as of the time to come." And it is insisted, that this section places administrators upon the same footing as executors, as to their appearing and pleading severally, and having several judgments against them. But I incline to think this is a total misapprehension of the true intent of that section.

It is well known that the office of administrator, as it is now understood, did not exist in the ancient common law. It was introduced by the 31 Edward III. which makes it obligatory upon the ordinary to depute the next and most lawful friends of the deceased to administer his goods, and in order to enable them to do so, gives them the same actions as executors have, and makes them accountable as executors are. Without this last provision in their favor, the administrators could neither have sued nor been sued touching the intestate's estate; for, as we are told, all the actions which an administrator can have are given by statute, for the common law took no notice of administrators. Now the section of our act under consideration, is intended merely to supply the place of that ancient statute in this respect, and is expressed in nearly the same words. But, unless all lawyers, from the time of Edward III. down till this day, have been mistaken, the statute of Edward never intended to enable administrators to appear and plead severally and to have several judgments against them. And by all right rules of reason, as our act is made to supply the place of that statute, and nothing more, it ought to have the same construction. It introduces no new law; it changes no ancient principles. It may fairly be assumed, therefore, that there is nothing in this topic of the plaintiff's argument. The sixth section of the same act, which is also pressed into the service of this argument, says, " that in actions against divers executors, they shall all be considered as one person

representing the testator, and that such as shall be summoned, &c., shall answer the plaintiff, and, if judgment be for him, it shall be against those summoned, and also against all the others, of the goods of the testator, as well as if they had been summoned and appeared." This is but a re-enactment, in substance, of the 9 Edward III. on that subject; and though it be extended to administrators by the section we have considered, yet it does not at all affect this case; for it is readily admitted, that if Freas had put in a joint plea, as well he might, or even suffered judgment to pass by default, that judgment might, and indeed must, have been against both himself and his co-administrator. But the question here is not, whether, upon one being summoned, judgment can be entered against both? but, whether they can plead severally, and have several judgments; and I think they certainly cannot. I do not now speak of costs.

2. In the second place, if co-administrators like co-executors, could plead separately and specially, each for himself, and one should be returned *summoned*, and the other *non est inventus*, and he that was summoned should plead separately, (as was done here) then they would stand in the same situation as in other cases where there is a severance in pleading; and so no judgment could be entered against the other that was not summoned, and did not appear; and especially no such judgment could be entered against him as admits assets, and subjects him to the return of *a devastavit*, either upon the *fi. fa.* or the *scire fieri inquirendum*.

3. It will follow, from these observations, that, in my opinion, this judgment, so far as it relates to Henry Freas, being a judgment of exoneration, *in presenti,* at least; and so far as it relates to Ann Robinson, being a judgment altogether irregular, and as none, the non-payment of it cannot be assigned as a breach of the condition of the administration bond, in order to subject either them or their sureties to the penalty of it. It is said, that as this is a subsisting judgment against Ann Robinson, it must have its

full force, and be pleadable like all other judgments, until reversed upon writ of error, in due course of law.    But if I am right in the view I have taken of it, it is a mere misentry, made incautiously, and without any proceeding to support it, and like all other misentries of that kind, would be a proper subject of the *breve de corona coram nob.* at the common law.    Now I certainly need not cite authorities to shew, that in all cases where that writ would lie formerly, the court will now grant the same relief upon motion, or take notice of the error in any future stage of the proceeding which would carry it into effect.    They will never give operation, in any form, to a mere misentry.

But whether we consider this judgment against Ann Robinson as a perfect nullity, or as a regular and valid judgment, will make no difference in my view of the case; for I take it to be well settled, that a creditor cannot sue an administration bond, and assign for breach of the condition thereof, the non-payment of a debt upon a demand *in pais,* nor even upon a judgment at common law and a *devastavit* returned upon it.    This has been adjudged repeatedly upon the 22d and 23d Charles II. which, in the condition of the administration bond, our act follows *verbatim,* as to all substantial matters, and with which, therefore, it must have the same construction.

It was for some time doubted whether a creditor could sue *at all* on an administration bond.    But even after that doubt was done away, the courts still confined them to the proper objects of the bond.

The first case that I find on this subject is, that of the *Archbishop of Canterbury* v. *Brown* (1 *Lutw.* 882).    In that case the defendant pleaded performance as to every particular contained in the condition, and the plaintiff replied, with a *protestando,* that he had not performed, &c., that the intestate was indebted, by specialty, to the assignee of the bond in so much, and that the defendant, as his administrator, had assets in his hand to pay, but had refused

to do so. To this replication there was a demurrer, and the demurrer was sustained, because the Ordinary cannot assign for breach of the condition of an administration bond the non-payment of a debt.

In the case of the *Archbishop of Canterbury* v. *Wills* (*Salk.* 315) Chief Justice Holt says, " since the statute of Charles II. the condition of the administration bond being to account at a day certain, the administrator must account at his peril, and that without citation on suit; and any party interested may come in and contest it. And whereas, by the words of the condition, he is to *administer well and truly* that shall be construed in bringing in his account, and not in paying the debts of the intestate, and therefore, a creditor shall not take an assignment of the bond and sue it, and assign for breach the non-payment of a debt to him, or a *devastavit* committed by the administrator, for that would be endless and infinite.

In the case of *Wallis* v. *Pipen,* (*Ambler* 183) Lord Chancellor Hardwicke says, " creditors cannot sue an administrator on his bond taken by virture of the statute of Charles II. for such bonds are only for the benefit of the legatees, the next of kin, and persons entitled to the residue." The meaning of this must be, that the creditor cannot sue, and assign the non-payment of his debt as a breach; for long before that time it was settled that he might sue for an inventory and account.

In the case of *Greenside et al.* v. *Benson et al.* (3 *Atk.* 248) the defendant, Benson, was a creditor of the intestate for £300, with interest, on bond. He sued the administratrix at law on this bond, and she pleaded no assets *ultra* £54, which she paid into court. Upon this there was a trial, and a verdict that the defendant had assets to £226 beyond the £54. Benson then took an assignment of the administration bond, and assigned for breach of the condition, that the administratrix had not made a true and perfect inventory, and had judgment by default for the whole penalty. This

bill is then brought by the sureties in the bond to be relieved against the judgment, but the Lord Chancellor ordered it to stand as a security for so much as the inventory should fall short of satisfying the principal and interest of Benson's bond.

Here it is to be observed, and it is clearly to be collected from the case—1. That the jury did not find the amount of Benson's debt, on the 'plea of *plene administravit ultra,* &c., as they were made to do for Jones in the case before us, but merely the fact put in issue, that the admistratrix had assets *ultra* to so much; that the assets admitted, and the assets *ultra,* found by the jury, when added together, did not amount to the plaintiff's debt; and that the judgment, of course, was for the whole penalty of the bond.

2. That Benson, on his citation on the administration bond, did not assign for breach of the condition, the nonpayment of his judgment, as is done here, but the not exhibiting of a true and perfect inventory of the intestate's estate.

3. That upon obtaining his judgment, by default, on this administration bond, he did not proceed to have his particular damages assessed, but was about to take out, or actually had taken out, his execution for the whole penalty; and that upon this a bill was filed in equity, because the sureties had no relief at law.

4. That the judgment for the penalty was to stand, not for the amount of the assets found by the jury in the hands of the administratrix, but for the whole of the principal and interest due on Benson's bond, how far soever it might exceed the assets; for the whole penalty had become forfeited at law, and the chancellor could not relieve against it upon a judgment by default, till the debt was fully satisfied.

In this case the solicitor-general, who argued for the administrators, puts the question, whether a bond taken by the Ordinary, under the 22d and 23d Charles II., relating to intestates' estates, is to be confined to the exhibiting of

an inventory for the benefit of the legatees and next of kin? or, whether it extends to creditors also? And he says, as there have been cases determined upon this point, it would be directly encountering them to say, that a bond within that statute may be assigned to a creditor, and that he may assign the non-payment of his debt as a breach. The attorney-general, on the other side, admits this doctrine, so far as it goes to the non-payment of a debt being assigned for a breach, but after examining and animadverting upon the condition of the bond, he draws the conclusion, that a creditor may take an assignment and sue the bond, and assign for breach, that the administrators had not made a true and perfect inventory, for he is interested in having a complete disclosure of the estate. And the Lord Chancellor Hardwicke, in delivering his opinion, says, "there is no doubt but that the archbishop's commissory, the obligee, may assign a breach, in not delivering a true and perfect inventory, even without citation; but that what the solicitor-general, the counsel for the administrators, had said, would have been perfectly right, supposing the Ordinary had assigned for breach the non-payment of the creditor's debt;" thus establishing the principle, that such debt cannot be assigned as a breach on those bonds.

It is beyond all controversy, therefore, that, in the opinion of Lord Chief Justice Holt and Lord Chancellor Hardwicke, a creditor could not assign as a breach, of the condition of an administration bond, either a judgment at law against the administrator with a *devastavit* returned upon it, or the non-payment of a debt upon a demand *in pais*.

In the case of the *Archbishop of Canterbury* v. *House*, *Cowp.* 140, there was a rule to shew cause why the proceedings upon an administration bond should not be set aside, upon the ground that the archbishop could not depute a creditor to sue; but upon the strength of the case of *Greenside et al.* v. *Benson et al.*, above cited, as well as upon the reason of the thing, Lord Mansfield discharged the

rule, thus affirming the rule laid down in *Greenside's* case, but carrying it no further. And in this case it is clear, from his lordship's argument, that the breach assigned was not the non-payment of a debt, but the not making a true and perfect inventory ; for in this, he says, the creditor was most materially interested.

From these cases, adjudged by three of the greatest men that ever sat in the English courts, I think it manifestly appears, that though a creditor may sue an administration bond, in order to obtain a complete and perfect inventory and account of the estate, yet he cannot sue it, or get judgment upon it for his own individual debt.

But suppose it were otherwise, and that the creditor could assign for breach the non-payment of his own debt, and could recover a verdict and judgment for the amount, what purpose would it answer to him ? The money recovered is not to be paid to him; it is not to go to the payment of his debt exclusively ; it is, by the very words of the act, "to be applied towards making good the damages sustained by the not performing the condition in such manner as the judge of the Prerogative Court shall by his sentence and decree direct ;" that is, not the damages of the assignee of the bond only, but of all other persons interested in the estate; for if it were of the assignee only, there could be no need of any interference of the judge of the Prerogative Court, or of any sentence or decree about it. The money recovered, therefore, must be applied by the judge of the Pregroative Court to the payment of all the debts of the intestate, in their order, giving a preference to those that have a preference by law, and making a ratable distribution among all others. This is certainly the course of the ecclesiastical courts in England, which must necessarily have been in the contemplation of the learned judge who drew this act. To shew the more clearly that the application of the money recovered in these actions must necessarily be to the payment of all debts, let us pursue the thing a little·

Let us suppose the administrator to have wasted the whole estate, and to be himself insolvent, and that there is nothing to respond to creditors but the administration bond, shall he that can first get the assignment of it, and a verdict and judgment for his debt, even though it be a simple contract debt, swallow up the whole penalty, take the whole money recovered to himself, and leave all other debts, even of a superior order, altogether unpaid ? This, I think, would be hardly maintained by any body ; and it is to prevent this that the money recovered must be distributed by the judge of the Prerogative Court. What then is to be done upon such a recovery ? Is the judge of the Prerogative Court to divide the sum so recovered among all the creditors, and so pay the assignee of the bond but a part of his debt, and then put every other creditor to go through the same course, and make like division of what he may recover ? and if it be an estate in which there is a surplus, shall he, after all, compel the next of kin to run the same race ? This would, indeed, as Lord Chief Justice Holt says, *be endless and infinite.*

But it is not so. No such breach can be assigned. No such recovery can be had. The law runs itself into no such absurdity.

The condition of an administration bond requires, principally, three things : first, to make a true and perfect inventory and appraisement of the goods, chattels, and credits of the deceased ; secondly, to administer the same according to law, and make a just and true account of such administration (which, according to Lord Holt, is one and the same thing, for the settlement of the amount implies the just administration of the goods, and the payment of the debts, without which it cannot be made) ; and thirdly, to pay over the surplus to the next of kin, upon refunding bonds. A failure in either of these three things may be assigned, by a creditor, as the breach of the condition ; but I am not, at present, aware of any other thing which can be

so assigned. In all these cases, if the breach be proved, the recovery must necessarily be of the whole penalty, and not of any particular debt, or individual damages; the execution must go for the whole penalty; and the party against whom it is, has no relief except in the Court of Chancery, and not even there without shewing a complete administration of the estate. And as the law, when well understood, is perfectly reasonable and just in all respects, so it is in this also. The penalty of the administration bond is calculated upon a general estimate of the property of the deceased; the administrator and his sureties agree to this estimate and condition as completely covering the value, and no more; the administrator alone collects the goods and sells them ; he recovers the debts and receives the money; he alone knows the condition, the particulars, and the amount of the estate; he refuses to exhibit an inventory or to give an account; what can be more reasonable, then, than that he and his sureties should pay the penalty which is but the estimated value, and estimated by themselves too, for the benefit of creditors and others entitled ? It is true that this penalty and the recovery upon it, is generally used only as a rod upon the back of the administrator, to compel him to do his duty, and if he do so satisfactorily to the Ordinary, even though out of time, it will not be exacted; and especially here, where, by the administration, the same person is both Ordinary and chancellor. But this does not change the principle.

I remember a case at the Sussex circuit, some years ago, in which the plaintiff had assigned for breach on one of these bonds, that the administrator had not made a just and true account of his administration ; and upon this assignment he would have gone into proof of his debt, and of the property which came to the hands of the administrator, and the value of it, in order to shew that he had sufficient to pay, but I refused both the one and the other, and it being proved that there was no account settled, I directed the jury to find the

whole penalty, which they did do accordingly. Upon this, though it was submitted to, I heard a little murmur at the bar, which induced me to look into the matter the more fully at chambers; and the investigation which I then made, fully satisfied me that the direction was right; and that upon such an assignment, there can be no proof of the debt, or of the amount of the estate which came to the hands of the administrator, or other matter which would put upon the jury any thing like an estimate of the estate, or a settlement of the account. All that, belongs to another tribunal. ·

It has been said, in the course of the argument, that as this plaintiff has a just and undisputed debt, and as the estate of the intestate, as it came into the hands of the administrators, was abundantly sufficient to pay all demands against it, it would be a hard thing, indeed, if the law did not afford him a remedy.

I would answer this by saying that the law does afford a complete remedy, but that, in my view of the case, the plaintiff has not pursued that remedy.

If the settlement made in the Orphans' Court of the county of Salem, in December, 1809, was a *final settlement*, that is, a making of a just and true account of the administration, according to the condition of the bond, and if a confirmatory decree of the said court was passed upon it, as from the case submitted, we are ready to believe, then, the balance found in the hands of the administrators, was a surplus to be distributed according to the statute; for there can be no such final settlement until all the debts known, exhibited and allowed, are satisfied and paid, because settlement, as well from the force of the term, as according to the cases cited, implies payment. If the administrators, therefore, did pay out the balance found in their hands, upon debts not exhibited at the time of the settlement, or did make such distribution to the next of kin, of the balance or surplus found in their hands, and did take and file such refunding bonds, they have done their duty, and saved themselves and their sureties from the penalty of the

administration bond, and this creditor, probably, has no remedy but against the next of kin on their bonds to refund; but if the administrators did not do so, he may assign that for breach, and recover against them and their sureties. On the other hand, if the settlement, stated in· the case, was not such final settlement, but a mere exhibition to shew the condition of the estate for other purposes, then this creditor may assign for breach of the condition, the not making a true and just account of the administration, and upon that assignment may recover the whole penalty for his indemnification.

Upon the pleadings, however, as they are entered in the record, and upon the case stated for the opinion of the court, I think there must have been judgment for the defendant; but inasmuch as the case is in some degree a new case, and the law has not been so well settled as it might have been, I am disposed to let in the plaintiff to amend his replication and assignment of breaches, so to form an issue which may be within the view which I have taken of the case.

N. B. How far he can be relieved, after all, without first establishing his claim at law, by a regular and valid judgment against the administrators, it may be proper for the plaintiff to consider.

ROSSELL, J. This was a suit brought on the administration bond of Robinson and Freas, administrators, and Van Mater and Powell, sureties, by a creditor, to recover the amount of a judgment on a bond held by him, against the testator. The administration bond was taken in conformity to our statute, passed in 1795. *Pat.* 1556, *sec.* 11. In the condition of said bond, it is proved, "that administrators should make a true and perfect inventory of all the goods, chattels, &c., of the intestate, and well and truly administer according to law, and make a just and true account of their administration, &c., and deliver and pay unto such person or persons respectively, as is, are, or shall by law be entitled to receive the same."

This language appears sufficiently comprehensive to secure the interests of all who have a legal right, to expect a benefit from the estate of the intestate, whether creditors or next of kin, entitled to a distributive share. An administrator is to sell the personal estate of the testator, to recover debts due, and pay all legal demands against it, and settle his accounts in the Orphans' Court, that distribution of the remainder may be made to those who by law are entitled to it. And should any person suppose himself aggrieved by a non-performance of those conditions, his legal remedy would be a prosecution on the bond. But it is alleged by the defendants, that this bond is given for the benefit of the next of kin only; that it is copied from the statute 22 and 23 Charles II. chap. 10; and that the construction given by the English courts to that statute, will be necessarily followed by this court; and no creditor as such, can in England, prosecute on such bond, and assign as a breach of the condition, the non-payment of a *debt* or a *devastavit.* In support of this position, they cite 3 *Mod.* 61; 1 *Salk. Ambler* 183; 2 *Burns' Eccl. Law* 641; *Toller's Law of Executors* 496. In 3 *Mod.* 61, the passage relied on by the defendant, it is said, " there can be no remedy on the bonds of administrators, until the Ordinary hath appointed distribution." If this was ever law, it has since been overruled; as the right of persons interested, *even creditors,* to sue on such bonds in the name of the Ordinary, to compel the administrator to file an inventory of the intestate's estate, has been repeatedly recognized. In *Toller's Law of Ex'rs* 496, it is laid down, the words " he (the administrator) is well and truly to administer," are construed to apply merely to the bringing in of the inventory. It is then added, " creditors have no right to sue on the bond, for the court cannot compel the payment of debt." The writer is speaking of the Ecclesiastical Court, which had no common law jurisdiction, nor power to interfere, as between creditor and debtor. *Ambler* 183—Lord Chancellor Hardwicke

says, " that creditors cannot sue an administrator on bonds taken by virtue of the statute of Charles II., for such bonds are intended only for the benefit of the next of kin, and persons entitled to the residue." 1 *Comyns* cites only the case from 3 *Salk.* 316. It is laid down, " that he shall well and truly administer, shall be construed in bringing in his accounts, and not paying the debts of the intestate, and therefore a creditor shall not take an assignment of the bond and sue it, and assign for a breach the non-payment of a debt due to him on a *devastavit,* for that would be needless and infinite."

These authorities are, apparently, founded on the statute of the 22d and 23d Charles II., and in aid, it is said, of some authorities of the Ecclesiastical Court. That statute was passed in 1670, for the better settling of intestates' estates, and declares, that all Ordinaries and ecclesiastical judges, having power to grant letters of administration, shall take bonds of the administrators so appointed, with two or more able sureties, in the name of the Ordinary, in the form of which ours is a copy.

And the said Ordinaries shall call such administrators to account for and touching the goods of any person dying intestate, and make a just and equal distribution of what remained clear (after all debts first allowed and deducted) among those who by law are entitled to it, and compel such administrator to pay the same by the due course of the ecclesiastical law.

The eighth section enacts, to the end, that due regard be had to creditors, that no distribution shall be made until a year from the testator's death has expired, and that those to whom any share is allotted, shall give bond with sureties, to pay back to the administrator, in ratable proportions, any debts that shall after appear to be due from the estate of the testator, to enable him to pay the same.

In 1677, the 30 of Charles II., an act was passed to enable creditors to recover their debts of executors and administrators of executors and administrators in their own *wrong,*

who had been possessed of, wasted, or converted to their own use the personal, estate of other dead persons, in the same manner as they might have done if their testator or intestate had been living. And in the 4 and 5 of William and Mary, this act was revived and extended to executors and administrators of executors and administrators of *right.*

In 1685, fifteen years after the 1 of James II., the statutes of 22 and 23 of Charles II. were revived, made perpetual, and enlarged, provided always, that no administrator shall be cited to any courts in the last named acts mentioned (*viz:* the Prerogative and other ecclesiastical courts) to render an account of the personal estate of his intestate, unless it be at the instance or prosecution of some person in behalf of a minor, or having a demand out of such estate, as a creditor or next of kin, nor be compelled to account before any of the Ordinaries or judges, otherwise than as aforesaid.

The foregoing are the acts of the parliament of England, on which the decisions relied on by the defendants are founded; but even there, in *Cowp.* 140, Lord Mansfield says, " I see no authority which says the Ordinary cannot empower a creditor to sue on an administration bond; on the contrary, he ought to do so ; for although a creditor has no concern in the latter part of the condition *distribution,* yet he is most materially interested in the administrator's delivering a just and true inventory, and the due administration of the effects." This doctrine is also recognized in 3 *Bac. Abr. title Executors and Administrators.*

The province of this court would be, on this statute of Charles II., to settle the question between these contradictory authorities, if, indeed, it can be raised in New Jersey ; but this I do not 'think necessary. Although our form of an administration bond is copied from that in Charles II., yet our statute is much more comprehensive, and couched in different terms. And it would appear that our legislature, in 1784, when about to define the authority of the Ordinary, his surrogates, &c., and to establish orphans'

courts throughout the state, had another class of citizens in view beside those who claimed a distributive share of the residue of an intestate's estate, *viz., creditors,* and that they were equally entitled to justice and protection; they, therefore, make them parties in interest in the due administration of intestates' estates. In the eighth section they provide, that the Orphans' Court shall have power, where letters of administration have been granted, or on sufficient security, after hearing the objections of creditors, or persons concerned, to order such administrators to give such further security to the Ordinary by bonds, in usual form, as the said court may approve of, on neglect to revoke the letters of administration, and the Ordinary or surrogates to grant letters to such persons having a right as will give bonds in manner aforesaid.

The tenth section enacts, that an executor or administrator may, on sufficient reason, call on his co-executor or administrator to account for all assets that have come to his hands, and the court may compel such executor or administrator to give security to his co-executor or administrator for the payment of the balance remaining in his hands, to *creditors,* legatees, or representatives of the testator or intestate; and, on refusal, to authorize the executor or administrator to sue for such assets in the hands of the refusing executor or administrator.

The sixteenth section provides, that the surrogate shall audit and state the accounts of executors and administrators, they having advertised their intentions for two months, and report the same to the Orphans' Court. But if *any person interested* make exceptions, &c., provided always, that in all cases where it shall appear that the executor or administrator hath not sufficient assets to satisfy *just debts,* and expenses, the court shall not decree an allowance of the account until the next term, nor till proclamation at that and the subsequent court, for all *creditors,* and others interested, to appear and shew cause, &c.

The seventeenth section makes the decree of the Orphans' Court, on the final settlement, conclusive to *all parties*, and for ever discharges the executors or administrators from all demands of *creditors* or others, except for assets coming to their hands after settlement for fraud or apparent mistake.

In the twelfth section of the act concerning executors, administrators, and distribution of estates, it is enacted, that administrators shall give bonds; and, in case they become forfeited, it shall be lawful for the Ordinary to cause the same to be prosecuted in any court of record, at the request of *any* party aggrieved by such forfeiture.

The twentieth section enacts, that no executor or administrator shall be cited to render an account otherwise than by inventory, unless at the instance or prosecution in behalf of a minor, or one having a demand out of the estate as a *creditor* or next of kin, &c.

It appears, from an examination of the two foregoing acts, that our legislature were careful to protect *creditors*, as well as the next of kin, from the unlawful acts of administrators, in wasting the estate of the intestate. They could not be ignorant that many persons died *insolvent* as well as *intestate;* and in that case no next of kin, merely as such, could have an interest in the estate. That a person of little or no property might obtain letters of administration, and waste the whole estate, or abscond, and were the creditors the *only parties in interest* to be without the shadow of a remedy, with their hands tied up from prosecuting for their rights, by the law giving six months to such administrator, in which to ascertain the amount of the debts, &c., of the intestate? I think not. The legislature, as wisely as justly, took a more enlarged view of the whole subject, added sundry provisions not found in the English code, and thus threw off the shackles that an individual opinion on a new and imperfect law had thrown around some after-decisions of the English courts, and provided a security to all concerned, *creditors* as well as others, that the estate

should be in good faith duly administered. This security was the bond; there was no necessity to alter the form of that of Charles II. the language was appropriate and amply sufficient to fulfil the intentions of the legislature. If creditors were not in legislative contemplation to be secured by this bond, why give them authority to call on the court to compel administrators to give further security in cases where they supposed it was not sufficient, or why are they so repeatedly mentioned throughout the statutes, and first named as entitled to a preference over those who had claims only to the *residue.* For these reasons, I am satisfied that, in New Jersey, a creditor has a right to sue an administration bond, he having the proper authority from the Ordinary so to do.

Since writing the above, I find myself supported by a decision in 13 *John.* 437, where it was determined, that a creditor might sue on an administration bond; also in 9 *Mass. Reports* 117.; 1 *Wash. Rep.* 31. I think, therefore, the breach assigned in the plaintiff's declaration for the non-payment of the money due him is well assigned, and the alleged breach of the condition supported.

Another point was raised on the argument, *viz :* that it appears on the record of the Orphans' Court that Jones had fully settled for all the assets that came to his hands, although a large balance remained in the hands of his co-administrator, and that, therefore, judgment could not go against Jones. If Freas had not been a party in this joint bond the objection might have prevailed. But the obligors on a joint bond are equally liable on the forfeiture of the condition. Indeed Freas has the less reason to complain; he knew, or ought to have known, the amount of the intestate's estate, and in whose hands it was; and, if the debts were not paid, he should have taken the measures pointed out by the act to compel his co-administrator to account and pay out of the balance in her hands, the just demands of

the creditors. I am, therefore, of opinion that judgment be entered for the plaintiff for the penalty of the administration bond.

FORD, J. concurred in opinion with the Chief Justice.

Therefore, there was judgment for the defendant, with leave given the plaintff to amend.