Upon reading the bond on the trial, which took place at Guilford, on the last circuit, before his Honor, Judge Pearson, the conditions were as follows:
"The condition of the above obligation is such that if the above bounden Sally Peoples and Reuben Folger, administrators with the will *Page 106 
annexed of all and singular the goods and chattels, rights and credits of Harbert Peoples, deceased, do make or cause to be made a true and perfect inventory of all and singular the goods and chattels, rights and credits of the said deceased, which have or shall come to the hands, possession or knowledge of the said Sally Peoples and Reuben Folger, or into the hands and possession of any person or persons for them, and the same so made do exhibit or cause to be exhibited to the county court, where orders for administration passed within ninety days after the date of these presents; and the same goods, chattels and credits, and all other goods, chattels and credits of the said deceased at the time of his death, or which at any time after shall come to the hands or possession of the said Sally Peoples and Reuben Folger, or into the hands or possession of any other person or persons for them, do well and truly administer according to law; and further do make or cause to be made a true and just account of their said administration, within two years after the date of these presents; and all the rest and residue of the said goods, chattels and credits which shall be found remaining upon the said administrators' account, the same being first examined and allowed by the county court, shall deliver and pay to such person or persons respectively as the same shall be due unto, pursuant to the true intent and meaning of the acts of the General Assembly in such cases made and provided. And it appears to us that a last will and testament was made by the deceased, and the executor or executors therein named did exhibit the same into court, making request to have it allowed and approved accordingly; but renouncing the right of executorship, administration with the will annexed is granted to Sally Peoples and Reuben Folger above named, (135) approbation of such testament being first had and made in the said court, then this obligation to be void and of none effect, or else to remain in full force and virtue."
His Honor being of opinion that the conditions of the bond did not provide for the payment of legacies the plaintiff submitted to a judgment of nonsuit and appealed.
This case does not raise the question whether the bond on which the action was brought could be put in suit at the instance of a legatee before the assent of the administrators with the will annexed to the legacy or a decree therefor in a proper court. On that question therefore we forbear from expressing an opinion. The only point presented for our determination is whether the condition of this bond be *Page 107 
sufficiently explicit to embrace within it the duty of accounting to the legatees of the testator.
We admit that where there is an ambiguity in the condition of an obligation which cannot otherwise be removed, the law adopts the construction which is the more favorable to the obligor, but it is beyond question that no formal or technical words are essential to the constitution of a condition, and that any set of words from which it can be satisfactorily collected that it was the intention of the obligor to bind himself to the performance of a duty will be sufficient to make the performance of that duty a part of the condition of his obligation.
The obligation before us is made payable to the chairman of the county court of Guilford. The condition states as facts that the last will and testament of Harbert Peoples had been duly proved in that court; that the executors therein named had refused the office, and that upon such refusal administration with the said will annexed had been committed to the two first named obligors, Sally Peoples and Reuben Folger. It is true that this recital is found in the latter instead of the preliminary part of the condition, where it would have been more appropriately introduced; but it is not the less on that account a recital, explanatory of the purposes of the instrument. The condition (136) then undertakes to set forth the means by which the obligation executed under these circumstances shall be discharged. It provides that if the persons to whom the administration with the will annexed has been thus committed, shall, within ninety days after the date of the bond, return a full inventory of all the effects and credits of the deceased; shall well and truly and according to law administer all the effects and credits of the deceased which shall come into their possession; shall at the end of two years, cause a true account to be exhibited of their administration; and all the rest and residue of the said effects and credits which shall be found due on such account, shall deliver and pay over unto such person or persons respectively as the same shall be due unto, pursuant to the true intent and meaning of the several acts of the General assembly in such cases made and provided; then the said obligation shall be void, but otherwise in full force and virtue.
There can be little doubt but that it was the intention of the parties to this instrument, the court acting through their chairman on the one side and the obligors on the other, to secure by it the performance of all those duties which ought to have been secured by an obligation from administrators with the will annexed. There is as little doubt but that it was the duty of the court to require, and of such administrators to execute an obligation that should secure a faithful administration of the assets for the benefit of the legatees. The Statute 21, Hen. 8, ch. 5, requires that if any person shall die intestate, or the executors shall *Page 108 
refuse to prove the testament, the ordinary shall grant administration to the widow or next of kin or both by descretion of the ordinary, takingsecurity for a true administration; and it cannot be questioned but that a true administration by an executor or his substitute, the administrator with the will annexed, comprehends the payment of legacies so far as his assets will permit. The executors indeed is not ordinarily required to give security for that purpose, because he is selected by the testator himself, and the testator, not having required surety of him to pay the legacies it was thought unfit that legatees who claim through the (137) bounty of the testator should have the right to demand it; but the administrator with the will annexed is selected by the court; the deceased had no hand in his appointment; the legatees do not claim against him as an agent appointed by the testator, but one appointed by the court, and therefore it was made the duty of the court to require surety from such officer for a faithful discharge of his duties. (See Washingtonv. Hunt, 1 Dev., 479.) This provision of the Statute of the 21st Hen, VIII, is accordingly incorporated substantially in the late Revised Statutes, vol. 1, ch. 46. It remains, then, to be seen whether this intention of the parties to this instrument has been so defectively expressed that the duty of paying legacies is not embraced within the fair import of its terms.
The difficulty is understood to lie in the last stipulation of the condition for delivering and paying to such persons respectively as the same shall be due unto, "pursuant to the true intent and meaning of the several acts of the General Assembly in such cases made and provided." It is supposed that "these persons" do not include legatees, because they
claim from the will of the deceased, and not under any act of the General Assembly. But in our opinion these persons do include legatees, because, although they claim under the will of the deceased, their claim is expressly sanctioned and made obligatory upon administrators by the acts of the General Assembly. In the first year of our Colonial Legislation of which we have any records, it was enacted that "no executor oradministrator shall hereafter take or hold (to) himself (according to the value of the appraisement) more of the deceased's estate than amounts to his necessary charges and disbursements, and such debts as he shall legally pay within twelve months after administration granted; but that all such estate so remaining shall immediately after the expiration of twelve months be equally and indifferently divided and paid to such persons to whom the same is due by this act or the will of the deceased,"
such persons giving bonds to refund for the payment of debts thereafter discovered. 1715, Swan's Ed., ch. 48. The same act directs administrators how they shall distribute a "surplusage," where there is an (138) intestacy among the widow and next of kin of the intestate, and *Page 109 
makes it the duty of the administrator, if any money shall remain in his hands after the terms of seven years shall have expired, not recovered by any of kin to the deceased or by any creditor in that time, to pay the same to the church wardens and vestry to and for the use of the parish where the said money shall remain. It also prescribes the condition of the bond to be given by administrators of interstates, to which form the present bond conforms mutatis mutandis, and directs that the bond shall be assigned to any person or persons injured, who shall and may maintain an action thereon. By subsequent acts passed before the execution of this bond, the prohibition on the executor or administrator to retain more of the deceased's estate than amounts to his necessary charges and disbursements and debts paid, has been so changed as to permit the executor to hold the estate for two years, and at the expiration of that time these acts expressly command him to divide, deliver, and pay over all such estate so remaining, to the person or persons to whom the same may be due by law or the will of the deceased. These acts also provide that all sums of money or other estate of whatever kind which shall remain in the hands of any executor or administrator for seven years after his qualification unrecovered by the creditors,legatees, or next of kin of his testator or intestate, shall, by the said executor or administrator, be paid over to the trustees of the University and they provide that the bond of an administrator shall be put in suit on the relation of any person injured without an assignment. See acts 1789, Rev., ch. 308, sec. 2; 2809, Rev., ch. 763, sec, 1; 1791, Rev., ch. 341. It is therefore literally true that the withholding by an executor or administrator of legacies given by a will the administration whereof has been confided to him, after the expiration of two years from his qualification, provided that he has sufficient assets over and above his charges and disbursements, and the just debts of the deceased is in direct violation of these acts; and therefore the condition of a bond which stipulates for payment of what shall remain after a fair account of the administration of these assets, unto those "to whom the same may be due pursuant to the true intent and meaning of the acts of the General Assembly in such cases made and provided," is broken in the letter (139) as well as in its spirit by such violation of these acts.
There are other considerations which have had an influence in bringing our judgment to the conclusion which we adopt as correct. By the acts of 1807, Rev., ch. 730, and 1813, Rev., ch. 855 (1 Rev. Stat., ch. 46, sec. 6 and 7), our Legislature has required that executors under certain circumstances shall give bond for "a faithful administration," and on their failure to do so the court shall grant letters of administration with the will annexed. This requisition is avowedly made for the benefit of the legatees ("representative" is the term used), as well as of the *Page 110 
creditors, and the only direction as to the form of the bond is to be collected from these words, "bond with sufficient security for the faithful administration of the estate, as is required by law in cases ofadministration on the estate of deceased persons, and there shall be the same remedy upon the said bond to the party aggrieved, as upon the bond of an administrator in like cases." If a bond had under these statutes been required from the executors of Harbert Peoples, and they under such requirement had executed an obligation with a condition in the very words of that before us, it would, we think, have fully conformed to the requisition. It would have been "a bond for a faithful administration of the estate as required by law in cases of administration upon the estates of deceased persons." If so, it might be put in suit at the instance of an aggrieved legatee as well as of an injured creditor. But if such a condition would be in the bond of an executor effectual to secure the interests of legatees as well as of creditors, it is not easy to see why it should have a different operation when contained in the bond of the executor's substitute, the administrator with the will annexed.
The construction which we adopt is moreover in the spirit of the adjudications which have prevailed in this State on the subject of administration bonds. According to these adjudications such bonds have an operation which it has been doubted at least whether they have been permitted to have in England. Creditors, who certainly are not among the persons to whom the rest and residue of the estate, after a full (140) administration and the taking of the account, is to be delivered and paid over, have with us a right to put such bonds in suit, and allege for breach the nonpayment of a debt. The words "the said effects shall well and truly administer according to law," have been deemed sufficiently comprehensive to provide against every case of mal-administration to the injury of any one; and therefore to enure to the benefit of creditors. The People v. Dunlap, 13 Johns., 437. This construction, which has been supposed to be technically wrong (seeWashington v. Hunt, 1 Dev., 475), is felt by all to be substantially right upon the great principle of public policy and public justice, that when the State confides to any individual the management of property not his own, it is bound to take, and it is to be presumed intends to take, security for the rights of all who may be injured by the misconduct of their office.
It is the opinion of the court that the judgment of nonsuit in this case ought to be set aside, and the cause remanded for a new trial.
PER CURIAM. Judgment reversed. *Page 111