## VAN TASSEL and wife *vs.* VAN TASSEL and others.

It is a clear breach of public duty for a sheriff, in any case, to suffer the attorney of the plaintiff to take into his hands the proceeds of a sale and to deal with and dispose of them at his pleasure and at the time most suitable to his convenience.

In sales in actions for the partition of lands, the foreclosure of mortgages, or to carry the trusts of a will or deed into execution, where numerous other persons are interested, and entitled to share in the proceeds, besides the plaintiff, the officer fails in fulfilling his official obligations if he suffers the purchase money to pass into hands other than his own. *Per* BROWN, J.

Whenever such a case occurs, the courts can do no less than hold the sheriff to a rigorous accountability.

Where a sale of lands under a decree in a partition suit was conducted and the lands were offered for sale, and sold, by the plaintiff's attorney, in the name of the under sheriff, the attorney delivering the deeds to the purchasers and receiving the purchase money, with the assent of the under sheriff, who was not present at the sale, but who subsequently executed the deeds, and signed the report of the sale; *Held* that the under sheriff must be deemed to have acted, in the matter, through the attorney, and to have ratified and affirmed all that he did touching the sale; and to have received the proceeds of the sale into his own hands, and to have incurred the usual liability therefor.

*Held also*, that the sale and conveyance of the lands mentioned in the judgment being an official act, the sheriff himself was liable to the parties entitled to the proceeds, for their respective shares thereof, upon a misapplication of the money by the attorney, to the same extent as if he had executed the judgment himself.

Although technically, and strictly, the words of the 22d section of the statute of limitations, respecting the time for commencing actions against sheriffs, &c. for official acts, do not apply to proceedings as for contempts to enforce civil remedies, yet in its spirit and intent that section does apply to such proceedings.

The court has the power to withhold, and should withhold, the exercise of its jurisdiction in summary proceedings on motion, whenever an action for the claim sought to be enforced is barred by force of the statute of limitations.

For the omission of a sheriff to pay over to the county treasurer the proceeds of a sale of lands in a partition suit, the period of limitation begins to run at the time the omission occurs, and not from the time when the party in interest becomes apprised of his right of action.

THIS was an application made by Susan Van Tassel, a defendant in this action, for an order that Benjamin D. Miller, formerly sheriff of Westchester county, make and file

his report of his proceedings upon the judgment for partition in this action, subsequent to his report of sale; and that he distribute and dispose of the proceeds of the sale according to the terms of the judgment, or that an attachment issue. The motion was made at a special term held by Justice LOTT, who denied the application, and the applicant appealed to the general term.

*P. Y. Cutler,* for the motion.

*R. H. Hart,* for the sheriff.

*By the Court,* BROWN, J. Susan Van Tassel, one of the defendants in this action, applied to the special term, upon the usual notice, for an order that Benjamin D. Miller, former sheriff of the county of Westchester, make and file his report of his proceedings upon the judgment in this action subsequent to his report of the sale of the lands and premises mentioned in the said judgment; and also that he distribute and dispose of the proceeds of the said sale, according to the terms of the said judgment, or that an attachment issue against him. The real object of the motion was to compel the said former sheriff to pay over to the treasurer of the county of Westchester the one third part of the net proceeds of such sale which were by the terms of the said judgment directed to be paid over to the treasurer and by him invested at interest for the use and benefit of Susan Van Tassel, the moving party, during life, she being entitled to a life estate therein. The motion was heard by Mr. Justice LOTT, sitting at the special term, and denied by him, from whose order in the premises she has appealed to the general term.

The parties in the action are the children and heirs at law, and the widow, of Robert Van Tassel, late of the county of Westchester, who died in September, 1849, seised of the lands which were the subject of the sale. The action was brought for a partition or sale of the lands, and the widow,

Van Tassel *v.* Van Tassel.

Susan, was duly served with process to appear and answer, but she suffered the complaint to be taken as confessed. The proceedings were conducted by Charles A. Purdy, deceased, late of White Plains, as the attorney for the plaintiff. In April, 1851, the usual decree or judgment for a sale of the lands and premises by the sheriff of the county of Westchester was obtained from the special term of this court. The judgment also contained this direction—that the sheriff ascertain and report whether the defendant Susan Van Tassel is willing to accept, in lieu of her dower in the premises, a gross sum in satisfaction thereof, and that the sheriff pay such gross sum to her, upon her executing the usual release of her title and interest, &c.; but in the event of her refusal to accept such gross sum, then he was directed to pay over to the county treasurer the one third part of the proceeds of the sale, to be invested by such treasurer at interest during her life, for her use and benefit. A part of the premises were sold upon the usual notice, on the 31st May, 1851, to Ezra Van Tassel, one of the defendants, for $6202, and on the 6th March thereafter the residue of the lands were sold, upon the usual notice, to Wright Van Tassel, another of the defendants, for $551. The purchase money was duly paid, in conformity with the terms of the sale, and deeds duly executed to the purchasers within a few days after the sales; but the exact time does not appear from the papers. The execution of the deeds and the payment of the purchase money appear as well from the affidavits as from the sheriff's report of the sale, which was filed and confirmed on the 15th day of March, 1852. No report of the distribution has been filed, and the one third part of the purchase money in which the widow had an estate for life, has not been paid to the county treasurer, pursuant to the direction of the judgment. Charles A. Purdy was insolvent at the time of his death.

The other facts upon which the appeal must be determined are not open to any serious dispute. It does not appear, nor is it claimed, that Benjamin D. Miller, the sheriff, personally

had any thing to do with the sale or the execution of the judgment. He was not present at the sale, received no part of the purchase money, did not sign or execute either of the deeds, and did not sign or file the report of the sale. Indeed he swears that he had no knowledge of the transaction, and first became acquainted with it after Charles A. Purdy's death, which occurred in January, 1858. The papers show that the sale was conducted and the lands offered for sale and sold by Charles A. Purdy, the plaintiff's attorney, in the name of John T. Yoe, the under sheriff of Benjamin D. Miller. The decree or judgment was not put into the under sheriff's hands. He was not present when the property was offered for sale, nor when it was struck off to the purchaser, nor did he receive into his own hands any part of the purchase money. But he arrived at the place of sale before the bidders and those in attendance separated, and upon being informed by Purdy that the lands had been sold, he immediately turned away and left the ground. Purdy received the purchase money and paid such of the parties as were paid their several shares. He prepared the deed or deeds and delivered them to the purchaser. In fact, except signing the sheriff's name, he did every thing in regard to the sale of the lands which the sheriff was required to do by the exigency of the judgment or decree. He also paid to the widow Susan Van Tassel (she not having released) the interest upon the one third part of the purchase money directed to be invested for her benefit, for several years and up to the time of his death, at the same time saying the same was paid over and invested at interest. The under sheriff, however, executed the deed or deeds of conveyance in the usual form, and tacitly if not expressly authorized Purdy to deliver them to the purchasers and receive the purchase money. He also, as under sheriff, signed the report of the sale and thus enabled Charles A. Purdy to put it on file and perfect the proceedings. After all this, it becomes a matter of no moment whether the under sheriff received the money or not. He must be deemed to have acted, in the premises,

Van Tassel *v.* Van Tassel.

through Charles A. Purdy, and to have ratified and affirmed all that he did touching the sale. The judgment, in the form in which it was rendered, was incapable of execution by any other person than the sheriff. Purdy, in respect thereto, was as powerless as any other person, and without the concurrence and express assent of the sheriff, or the under sheriff, he could not have passed the title or touched a dollar of the purchase money. There is no rule of law which can be successfully invoked to exonerate him from being deemed to have received this money. Any other conclusion would result in wrong and injustice to others. It is a clear breach of public duty for the sheriff or a referee in any case to suffer the attorney for the plaintiff to take into his own hands the proceeds of a sale and to deal with and dispose of them at his pleasure and at the time most suitable to his convenience. In executions upon a common law judgment where the subject belongs exclusively to the plaintiff, little or no injury can result, because the plaintiff is in fact dealing with what is his own. But in sales in actions for the partition of lands, the foreclosure of mortgages, or to carry the trusts of a will or deed into execution, when numerous other persons are interested and entitled to share in the proceeds, besides the plaintiff, the officer fails in fulfilling his official obligations if he suffers the purchase money to pass into hands which are not his own. Whenever such a case occurs the courts can do no less than hold the sheriff or the referee to a rigorous accountability. In the present case the under sheriff, upon the most obvious principles, must be deemed to have received the proceeds of the sale into his own hands and to have incurred the usual liability therefor.

If the sale and conveyance of the lands mentioned in the judgment is to be regarded as an official act, as it certainly must be, then the sheriff himself is responsible to the party injured, and not the deputy or under sheriff. Whatever the under or deputy sheriff does under color of his office is deemed to be done by the sheriff himself. In *The People* v. *Brown,* (6 *Cowen,* 41,) the counsel for the sheriff submitted to the

court whether he should not be discharged from an attachment for not returning a *fi. fa.*, on the ground that it had been delivered to the under sheriff who had collected the money under it. The court said: "The court look to the sheriff. They do not know the deputy, in this and the like proceedings. The sheriff must stand committed until the money and costs are paid." In *Walden* v. *Davison*, (15 *Wend.* 579,) Mr. Justice Bronson says: "In ascertaining whether the sheriff is answerable for the acts of his deputy, the question is whether the latter did an official or a mere personal act. If the act is personal only, and does not relate to his duty as an officer, he is not the agent or servant of the sheriff; but if he execute process under color or by virtue of his office, the sheriff is answerable for the consequences. When he acts by virtue of his office, third persons have a right to regard him as the mere agent or servant of another, and resort to the principal for the redress of any injury they may sustain. It would be a dangerous doctrine to hold that the sheriff may, for his own convenience, depute persons to discharge the duties of his office and yet not be answerable to third persons for their misconduct." It is quite well settled that in a case like the present the sheriff is liable to the same extent as if he had executed the judgment himself and did precisely what the under sheriff has done.

The more important, and, I apprehend, real impediment in the way of relief upon a motion for an attachment is the statute of limitations. "All actions against sheriffs and coroners upon any liability incurred by them by the doing of any act in their official capacity, or by the omission of any official duty, except for escapes, shall be brought within three years after the cause of action shall have accrued, and not after that period." (2 *R. S.* 224, § 22, *2d ed.*) Technically, and strictly, the words of this section do not apply to proceedings as for contempts to enforce civil remedies, because it speaks of actions exclusively. But in its spirit and intent it does apply to such proceedings. Otherwise, in numerous instances,

it would be wholly nugatory. This class of officers would find little benefit in an act which protected them from the consequences of an action and left them exposed to the more summary and severe remedy of a motion, with fine and imprisonment, perhaps, for the same cause. The act, like all other acts of limitation, is designed for peace and quiet, and to fix a period after which officers of the class designated shall not be vexed with actions and proceedings for acts and omissions of official duty. The court have the power to withhold, and should withhold, the exercise of its jurisdiction in summary proceedings on motion, whenever an action for the claim sought to be enforced is barred by force of the statute of limitations. In this way effect may be given to the manifest intention of the legislature. Before the revision of the statutes which took effect in January, 1830, the courts of equity were not within the words of the statutes of limitations; yet the statutes were admitted to be the rule in equity as well as at law in cases where these courts and the courts of common law had concurrent jurisdiction. (*Kane* v. *Bloodgood*, 7 *John. Ch. Rep.* 90. *Souser* v. *De Meyer*, 2 *Paige*, 574, 577.) In *The People* v. *Everest* (4 *Hill*, 71) the defendant, late sheriff of Essex, was brought up on an attachment for not returning a writ of *fieri facias*. The court said: " The statute of limitations is certainly not, *proprio vigore*, a bar to the imposition of a fine for the benefit of the plaintiff, even to the full amount of the sum indorsed upon the *fi. fa.* But we think that notwithstanding where the party lies by after the return day till an action for not returning is barred by the statute, damages for the omission ought not to be summarily awarded. The party should be left to his action upon the return."

It was said, upon the argument, that Susan Van Tassel, the widow, was guilty of no laches; that the rule should not be applied to bar her motion in this case, because she had made her motion as soon as she became aware the money in which she had an interest had not been paid to the county treasurer. I do not doubt that she first heard of the misap-

Van Tassel v. Van Tassel.

propriation of the money after the death of Charles A. Purdy. But this is not a case in which the period of limitation does not begin to run until the party in interest becomes apprised of his right of action. The failure of the sheriff to return a writ, to file a report, or to pay over money to the county treasurer, is always within the knowledge of those interested, if they will take the trouble to examine for themselves. And if they omit to make the proper inquiry they are not free from laches. In the present case, Susan Van Tassel knew she had an estate in dower in the lands of her deceased husband. She was made a party to the suit in partition and was personally served with the process to appear and answer. She also knew the property had been sold and the purchase money paid, for she received from Charles A. Purdy her interest upon one third part of it for several years after sale and up to the time of his death. If she omitted to ascertain where the principal sum was invested, and how it was secured, it was an act of pure negligence, for which no one is legally responsible but herself. Had she brought the transaction to the notice of the former sheriff, or the court, during the lifetime of Purdy, there can hardly be a doubt that the money would have been promptly paid over to the proper officer.

For these reasons I think the order made at the special term should be affirmed, with $10 costs.

[DUTCHESS GENERAL TERM, May 14, 1860. *Lott, Emott* and *Brown,* Justices.]