THE PEOPLE, *ex rel.* Whillis, *vs.* BROTHERSON.

An attachment will not be granted against an attorney, for the non-payment of money collected by him for a client, after the remedy by action is barred by the statute of limitations.

The proceeding by attachment, to compel the payment of money, is a civil remedy, and unless a legal right be established, the application for an attachment is without foundation.

The court will not compel payment, in any form of proceeding, when it is made to appear that there is nothing due according to the law of the land.

MOTION for an attachment to compel the payment of money collected by the defendant as an attorney.

BOCKES, J.  This is an application by Mr. Whillis against Mr. Brotherson, an attorney and counsellor of this court, for an attachment for the non-payment of money collected and received by him in an action in which Whillis was plaintiff and John Gilchrist was defendant.

The motion for the attachment against Brotherson was noticed for the 15th of January, 1861, the papers for the motion having been served probably about the first of that month, as the notice bears date on that day.  It appears that the motion was actually made on the 21st January, 1861, when, the papers presented being in conflict and leaving the material facts in an unsatisfactory state, an order was directed, referring it to "W. L. F. Warren, Esq., as referee to take the evidence upon the question presented by the affidavits which were controverted, and report the evidence to the court, with his conclusions of fact thereon."  The referee heard the matter pursuant to the order, and filed his report, with the evidence taken before him.  The motion is now renewed on the original papers and the said report and evidence.

A very great proportion of the matters stated in the affidavits and in the proof taken by the referee are of no value on this motion, and might well be expunged.  The material facts on which the motion must be determined, now stand,

The People *v.* Brotherson.

in my judgment, indisputable, and are these: On the 8th March, 1845, Whillis recovered a judgment against Gilchrist, in a justice's court, for $93.32 damages and costs. An appeal was taken by Gilchrist to the Saratoga common pleas, where the cause was tried in September, 1845, and judgment was rendered against Whillis for costs of suit. Whillis then took an appeal to the supreme court, and obtained a reversal of the judgment, with an order for a new trial. The action was thereafter tried three times in the common pleas without obtaining a verdict; the jury at each trial being unable to agree. The cause then came into the supreme court, under the new constitution of the state, and pursuant to the judiciary act of 1847. A fourth trial—or rather a fifth, counting that before the justice as one—was commenced at the circuit, and it appearing that the case was referable, the judge ordered a reference to Judge Doe, as sole referee, to hear and determine the case. It was heard before the referee, who on the 13th October, 1848, reported in favor of Whillis for the sum of $157.97. Judgment was entered on this report on the 23d December, 1848, for that sum, with $343.27 costs, in all $501.24. A case was made and settled, and an application was made to the supreme court, at general term, for a new trial, which was denied without costs to either party. But the damages to be recovered were reduced to $100. I infer this application for a new trial was on appeal from the judgment entered on the report of the referee, and it seems that the denial of a new trial was early in 1850.

Mr. Brotherson was attorney of record and counsel for Whillis from the commencement of the action, and as such attorney collected and received the amount of the judgment, and on the 25th June, 1850, acknowledged satisfaction and discharged it of record. Immediately thereafter, and in the following month, July, 1850, Whillis demanded or claimed of Brotherson such portion of the judgment as belonged to him. But Brotherson did not pay him any part of it, but still retains the whole amount so collected and received, claim-

ing that what he holds is no more than a fair remuneration for his services in the action.

As regards the facts above detailed, there is no controversy—no dispute. Both parties admit them to exist. Suppose these facts to constitute the whole case—and this is putting it in the most favorable light for the relator—is he entitled to his motion for an attachment? The defendant, Brotherson, insists that this extraordinary remedy is resorted to for the purpose of enforcing a stale demand—a claim admittedly barred by the statute of limitations. It is entirely clear that the demand could not be enforced by an ordinary action, against a plea of the statute of limitations. The money was collected on or prior to the 25th June, 1850, nearly ten years before this proceeding for an attachment was taken. It was held in *Stafford* v. *Richardson,* (15 *Wend.* 302,) that an action against an attorney for moneys collected by him must be brought within six years after the money is received by him, or the plaintiff will be barred by the statute of limitations. In this case Judge Savage remarks, (*p.* 306,) that the plaintiff should have brought his suit within six years from the time of receiving the money; and it is no excuse for him that he had made no demand. It was his own fault that he had not put himself in a condition to sue, and he can never take advantage of his own laches. But if it be assumed that no action can be maintained against an attorney, for money collected by him, until demand, as is undoubtedly the rule, *(Taylor* v. *Bates,* 5 *Cowen,* 376; *Rathbun* v. *Ingals,* 7 *Wend.* 320,) then Whillis' right of action was perfect as early as July, 1850. This is clearly established by the proof on both sides. Indeed the attorney and counsel for the relator on this application swears that he knew this claim was outlawed as an ordinary action when he advised Whillis to take this proceeding.

The question then is this: Can the relator have a remedy by attachment when he is shown to have none by an ordinary action? I am well satisfied he cannot. The statute of lim-

itations is a statute of peace, and may be urged as a protection against a stale demand, in whatever form the claim may be presented in court. It has been well said that the statute is founded in a wise policy, and is not to be subjected to judicial exceptions arising from supposed equity. It furnishes a general rule for the observance of the court in cases that are analogous in character. So it was held in *Paff* v. *Kinney,* (1 *Bradf.* 1,) that although the statute was not in terms applicable to proceedings in the surrogate's court, still there was no reason why an action barred by the statute in all other courts should be sustained in the surrogate's court. This principle was somewhat elaborated by the chancellor in *McCartee* v. *Camel,* (1 *Barb. Ch. R.* 455.) He says, " the statute of limitations does not in terms specify the time within which a creditor, legatee or distributee shall institute a suit before the surrogate, against executors or administrators, to obtain payment of his debt or legacy, or his distributive share of the estate of the decedent. But the legislature never could have intended to give to a party the right to institute such suit before a surrogate, after his remedy was barred by the statute of limitations in all other courts. Such suits, therefore, by analogy to the statute of limitations, should be instituted before the surrogate before the time in which suits of the same character are required to be commenced in a court of common law or of equity." It has also been often held that when the courts of law and equity have concurrent jurisdiction over the cause of action, equity will act in obedience to the statute of limitations, and such defense will prevail if available in the law courts. In such cases of concurrent jurisdiction, equity must be governed by legal rules. This principle was applied in *The People* v. *Everest,* (4 *Hill,* 71,) which was, like this, an application for an attachment. I regard the case cited as directly in point. The motion was for an attachment against the sheriff, for not returning an execution. The excuse was that the statute of limitations had run against an action for not returning the writ. The

court held that this was no excuse why the officer should not make return, inasmuch as that was essential to warrant further proceedings by the plaintiff on the judgment. But it was further held, that although the statute of limitations was not *proprio vigore* a bar to the application as a civil remedy, still the action at law being barred by the statute, damages ought not to be summarily awarded. Judge Cowen remarks, the action being barred, the party by asking for a fine seeks by indirection what the statute has denied him directly. He adds: "the general statute of limitations has no application *eo nomine* to a bill in equity, even when that is concurrent with the remedy at law. Yet the court of chancery always allows it in such case to be pleaded, for the reason that the party should not be allowed to evade its effect by resorting to another forum. The principle applies here. Being barred of a remedy by action, he should not be permitted to hide his laches under the form of a proceeding for contempt." The decision in *Van Tassel* v. *Van Tassel* (31 *Barb.* 439) is to the same effect, and is, as I conceive, directly in point. In the case under examination the right of the relator, Whillis, to proceed by action at law and by summary application were concurrent. This ground of action, as well as his right to summary relief, rested alike on the validity of his legal claim. The proceeding by attachment to compel the payment of money is a civil remedy, and unless a legal right be established, the application for the attachment is without foundation. The court will not compel payment in any form of proceeding when it is made to appear that there is nothing due according to the law of the land.

There are other grounds of objection to the application urged, but it is unnecessary to examine them. The motion for an attachment must be denied, for the reason above stated.

The original notice of motion stated that an order would also be asked for, requiring Brotherson to show cause at the

The People v. Brotherson.

general term why he should not be stricken from the roll as an attorney of this court. This branch of the motion was not urged before me. I understand the motion now before me to be for an order, merely, that Brotherson pay $420.54, interest and costs, or that an attachment issue against him.

It seems, however, that the English courts will not strike an attorney from the roll for the non-payment of money collected by him simply, and, in the absence of fraud, trickery and evil practice. (24 *Eng. Law & Eq.* 392, 3. 89 *Eng. Com. Law,* 409.) In the former case cited, Jervis, C. J. remarks, there must be very special circumstances to justify such a course; mere non-payment of money will not do. (But see 2 *Cowen,* 588; 5 *Paige,* 311.) It is suggested in one case, that after the issuing of an attachment, and in case that should not be efficacious in producing the money, then the attorney might be *suspended* from practice until he should pay as directed by the order. The suspension and removal of attorneys is to a considerable extent regulated by statute. (1 *R. S. p.* 109, §§ 23, 24.) I do not deem this question before me on this motion.

Motion for attachment denied.

[SARATOGA SPECIAL TERM, August 5, 1862. *Bockes,* Justice.]