IN THE

# SURROGATE'S COURT

OF THE

## COUNTY OF NEW-YORK.

BEFORE ALEXANDER W. BRADFORD, SURROGATE.

## PAFF, EXECUTRIX OF DELACROIX, *vs.* KINNEY.

*In the matter of the Estate of* JOSEPH DELACROIX, *deceased.*

THOUGH the jurisdiction of the Surrogate when once obtained is exclusive of all other Surrogates, this is no bar to the institution of a suit at law upon a final decree.

A Surrogate's decree for a money payment would form the basis of an action at law, and not being the decree of a Court of Record, unless suit be brought thereon in six years, the statute of limitations may be set up as a bar.

The principle of the statute of limitations is applicable by analogy, to demands prosecuted in the Surrogate's Court, without any express provision.

Creditors, legatees, and distributees, have a concurrent remedy at law, in Equity, or in the Surrogate's Court, for the recovery of their debts, legacies, or distributive shares, and the time for the commencement of a suit for such demands in a Court of Law, should apply to all proceedings brought for the same cause of action in the Surrogate's Court.

Though an executor is a trustee, yet his trust is not exclusively within the jurisdiction of a Court of Equity; it is also cognizable at law, and thus

1

secures to him the benefit of the application of the statute of limitations in certain cases.

Where by a decree on the final accounting of an executor and executrix, the executor was directed to pay a debt due the Corporation of the city of New-York ; and subsequently the Corporation, on the application of the executrix, representing herself as " a principal legatee, and one of the executors in the will of the said J. D. named," assigned her the decree without consideration : Held that the assignment enured to the benefit of the estate, and the decree was thereby discharged ; that the fund left in the executor's hands to pay the decree, belonged to the estate, and the executrix could not deal with the creditor for her own benefit, so as to enforce the payment of the decree against her co-executor.

> F. DIBBLEE, *for Petitioner.*
> EDWARD SANDFORD, *for the Executor.*

THE SURROGATE.   This is an application by Maria A. Paff, executrix of the last will and testament of Joseph Delacroix, deceased, against Franklin S. Kinney, her co-executor, for the enforcement of a decree of the Surrogate of the county of New-York, made March 2, 1842.

This decree was rendered upon a final accounting by the executor and executrix, and directed the payment of $1596 53, to the Mayor, Aldermen, and Commonalty of the city of New-York, as a dividend on a debt then due the Corporation, arising on a decree of the Court of Chancery against the estate of the decedent for a deficiency ascertained on the sale of mortgaged premises, by foreclosure ; the mortgage foreclosed having been executed by the decedent and assigned to the Corporation.   At the final accounting before the Surrogate, it appeared that there remained in the hands of Mrs. Paff, the executrix, the sum of $1365 41 ; and in the hands of Mr. Kinney, the executor, the sum of $768 65.   After ascertaining and directing the dividends to be paid out of this fund to sundry claimants, and among them, the amount above mentioned to the Corporation of the city of New-York, the decree proceeded in the following terms : " And as it is advisable that the said sums be all paid out by one person, it is further ordered and decreed that the said Maria A. Paff, executrix

as aforesaid, after retaining the amount due to her, &c., pay the balance then in her hands, to wit, the sum of $1100 17, to her said co-executor, Franklin S. Kinney; and that on the payment of the same by her into the hands of the said Franklin S. Kinney, &c., she be discharged from her duties and liabilities as executrix of the said Joseph Delacroix; and thereupon it is further ordered, that the said Franklin S. Kinney pay, &c., the amounts above set forth to the other of the said creditors respectively, and that on the payment of the same, he be discharged from his duties and liabilities as executor as aforesaid."

The Corporation not having required payment of the amount directed to be paid them by the terms of this decree, Mr. Kinney on 25th January, 1845, paid one half of the sum, being $798 27, to Mrs. Paff, on her giving a bond with sureties conditioned for the re-payment thereof to Mr. Kinney, or to the Corporation, in case the Corporation should thereafter require or insist upon payment. The recital contained in the bond describes the payment by Kinney, as made to " Maria A. Paff, executrix of the will of Joseph Delacroix, deceased," and the object of the payment is declared to be " to the end that the said sum so received may be held on deposit by her until payment of the said sum so ordered to be paid to the said, the Mayor, &c., shall be required or insisted upon by them, &c."

Subsequently, the Corporation having by the sale of the property mortgaged by the deceased, and bought in by them at the sale under the foreclosure, realized a sum exceeding the original mortgage, interest and costs, Mrs. Paff petitioned the Common Council for an assignment of the Surrogate's decree, representing herself " as a principal legatee, and one of the executors in the will of the said Joseph Delacroix, named." On January 29, 1848, the Common Council passed a resolution directing the Comptroller to " cause a release to be given" to Mrs. Paff " for the amount" of the Surrogate's decree of March 2,

1842. On the 21st July, 1848, the Mayor executed to Mrs. Paff, under the Corporate seal, an assignment of the Surrogate's decree, duly approved by the Comptroller and the Counsel to the Corporation. This instrument is in terms an assignment, but contains a clause to the effect that Mrs. Paff receives it "as a quit-claim merely." Mrs. Paff now applies as assignee of this decree, for such proceedings on the part of the Surrogate, as may be necessary to enforce its execution against Mr. Kinney.

To this application Mr. Kinney, in the first place, interposes the statute of limitations.

The Surrogate's Court is a court of "peculiar and special jurisdiction," (2 *R. S., p.* 317. 3*d ed. Chap.* 2, *Title* 1,) and not a Court of Record, (*Ibid., p.* 375. § 1 ; *Wheaton* vs. *Fellows,* 23 *Wendell,* 375 ; *Croswell* vs. *Byrnes,* 9 *Johnson's R.,* 287 ; *Lester* vs. *Redmond,* 6 *Hill.,* 590 ; *The People* vs. *Corlies,* 1 *Sandford's Sup. Ct. R.,* 228.) The application is now made by a new party in interest, claiming as assignee of a decree more than six years after the entry of the decree ; and, with regard to the statute of limitations, it is to be treated as analogous to an action upon a judgment rendered in a court not being a Court of Record. (17 *Wendell,* 330 ; 5 *Hill.,* 408.) The Surrogate's decree being final and for a money payment merely, would form the basis of a suit at law ; (*Post* vs. *Neafie,* 3 *Caines' R.,* 22 ; 7 *Wentworth, Pl.,* 95 ; *Sadler* vs. *Robins,* 1 *Camp. R.,* 253 ; *Dubois* vs. *Dubois,* 6 *Cowen,* 494 ;) but even if not the subject of an action at law, it is a liability which, according to well established principles, should come under the application of the statute of limitations. The statute is not in terms applicable to proceedings in Surrogates' Courts, but there is no reason why an action barred by the statute in all other courts, should be sustained in the Surrogate's Court. (*McCartee* vs. *Camel,* 1 *Barbour's Ch. R.,* 456.) This has been held in regard to suits by creditors, legatees, and distributees. (*Ibid. ; Souzer* vs. *De Meyer,* 2 *Paige,* 574.) Since the statute of 21 *Jac.,* 1. *c.* 16., was

enacted, it has been the uniformly acknowledged doctrine of Courts of Equity, upon all *legal* demands, to yield obedience to the principle of the statute, though suits in equity were not within its words. Our statute as to concurrent remedies, seems only to be an enactment of pre-existing law, well settled by the decisions of Courts of Equity. (*Kane* vs. *Bloodgood*, 7 *J. C. R.*, 90.) Thus in England it was the exclusive province of Courts of Equity to enforce the payment of legacies and distributive shares; they could not be recovered by an action at law. But a creditor, on the other hand, could sue at law. Hence we find it held that while a legacy was not barred by the statute, yet an executor, or any person interested in the estate or fund, might set up the statute against a creditor. (*Williams on Executors*, 1535. 1740; *Shewen* vs. *Vandenhost*, 1 *Russ & M.*, 349 : Affirmed on appeal by the Lord Chancellor.) And even with regard to legacies, though the statute could not be pleaded, yet presumption of payment from lapse of time, and permitting the assets to be distributed without claiming the legacy, was a good ground of defence by way of answer. (*Higgins* vs. *Crawford*, 2 *Vesey, Jr.*, 572.)

But it is said that the liability of the executor in this case under the Surrogate's decree, is in the nature of a trust, against which the statute cannot be pleaded. The doctrine that the statute of limitations does not run against a trust, applies however only to " those technical and continuing trusts which are not at all cognizable at law, but fall within the proper, peculiar, and exclusive jurisdiction" of a Court of Equity. (*Kane* vs. *Bloodgood*, 7 *J. C. R.*, 111; *Stafford* vs. *Richardson*, 15 *Wendell*, 303.) As to legacies not charged upon land, debts, and distributive shares of an estate, the statutes of this State give a concurrent remedy to legatees, creditors, and distributees in the Courts of Law and Equity, and in the Surrogate's Court (2 *R. S.*, *p.* 176. § 2. 10. 19. 3*d ed.*); and the statute of limitations being a bar at law, it is equally so in the Surrogate's Court, or in a Court of Equity (2 *R. S.*,

*p.* 398. § 49. 50. 52. 3*d ed.*).    Even if this is to be con-
sidered therefore as a case of trust, still the creditor having
a right to bring his action at law, the statute of limita-
tions should be admitted as a bar to his application in this
Court.    It is contended, however, that a Court of Law had
not concurrent jurisdiction with the Surrogate's Court to
enforce this claim, on the ground that the provisions of the
Revised Statutes make the jurisdiction of the Surrogate
exclusive as to all matters and proceedings commenced
in his Court. (2 *R. S., p.* 318. § 1. *p.* 322. § 26. 3*d ed.*)  But
I do not understand these sections of the statute as designed
to establish any other position than, that, when jurisdic-
tion has been acquired by the Surrogate of one county, it
shall be exclusive, and no other proceedings in the same
matter shall be had before the Surrogate of any other
county. (*See Fitzpatrick* vs. *Brady*, 6 *Hill.*, 581.)  I feel
bound to say, however, that even if it were settled that
the Surrogate of this county had jurisdiction of this case
exclusive of all other Courts, either of Law or Equity, I
see no reason why the statute of limitations should not,
from analogy, prevail here as a good bar to a stale demand.
It is a "statute of repose," and based upon principles
quite as applicable to proceedings in this as in any other
Court. (*Mooers* vs. *White*, 6 *John. C. R.*, 360.)   On the
part of Mrs. Paff it is objected, that if the statute of limita-
tions be applicable, still the division of the fund between
her and her co-executor, and the bond given on that occa-
sion, constitute in effect such a recognition of the debt, as
to take the case out of the statute.   The fair construction
of the bond doubtless is, that the Corporation had a right to
insist upon payment of the decree.   It admits the exist-
ence of the debt and a liability to pay.   To bar the statute
there must be either an express promise, or an acknowl-
edgment of present indebtedness and a willingness to pay,
upon which the law will raise an implied promise. (*Angell
on Limitations, pp.* 245. § 25. 247. § 27. 232. 239 ; *Allen*
vs. *Webster*, 15 *Wendell*, 289.)    The acknowledgment

must not be accompanied by circumstances repelling the presumption of an implied promise. (*Purdy* vs. *Austin*, 3 *Wendell*, 187; *Cock* vs. *Weeks*, 7 *Hill.*, 45.) But it is at the least very questionable, whether an acknowledgment by an executor is sufficient to take a case out of the statute, and whether there must not be a clear agreement and express promise to pay. (*Angell on Limitations*, *p.* 290, *and the cases there cited.*) Now the acknowledgment upon which it is sought to raise an implied promise to pay the Corporation, was made not to the Corporation or to any one acting in their behalf, but on the contrary, to a party who then had no interest in the debt, nor any connection of any kind with the party to whom it was due; and an express promise therefore cannot be pretended. Again, it is to be observed, that this bond can hardly be taken as evidence of an intention or willingness to pay the Corporation, when the division of the fund contemplated by it, supposes the probability that the Corporation would not require payment. The just and fair interpretation of this instrument seems to require the belief that, finding the Corporation unwilling to press for payment, the parties, as executrix and executor, agreed to hold, each, one half of the fund; and as Mr. Kinney was liable for the payment of the entire amount in case the decree should be enforced, security was given for repayment to him on the happening of such a contingency. The mere fact of the division of the fund, is in entire opposition to the presumption of an intention or promise to pay. The bond was given to secure Kinney against the possibility of payment being required. The Corporation never did insist upon payment. The contingency, to guard Kinney against which the bond was given, never has occurred.

This disposition of the fund, and the bond executed in conformity to it, give rise to a more important question. In the recital of the bond, the payment of half the fund is described as made "to Maria A. Paff, executrix of Joseph Delacroix, deceased," for the purpose of being held on

deposit.   She is estopped from denying that the fund still belongs to the estate of the deceased.   The assets of a testator are the common property of all his executors.   The division made in the present case, distributed the fund equally between the executrix and executor, one half being placed in the custody of each.   This resulted from an arrangement and understanding between them both. The relation between the parties as co-executors, and as established by the bond, should preclude Mrs. Paff from making an effort to obtain the whole fund for her own benefit, in direct opposition to her own agreement.   (*Flagg* vs. *Mann*, 2 *Sumner's R.*, 520.)   If we proceed to examine the title under which Mrs. Paff claims a beneficial interest in this decree, we find other formidable difficulties.   The Corporation having been satisfied in conscience, the entire amount of their debt as established before the Surrogate in 1842, Mrs. Paff representing herself " as a principal legatee and one of the executors" of the deceased, petitions the Corporation for an assignment of the Surrogate's decree.   The Common Council direct " a release" to be given for the amount, but the instrument executed by the officers of the Corporation is in terms an assignment.   The validity of the instrument depends upon the authority conferred upon the officers of the Corporation.   That authority is contained in the resolution which directs a release, and not an assignment.   It is not to be overlooked, also, that the document contains a clause to the effect that Mrs. Paff receives it " as a quit-claim merely."   Mrs. Paff put herself before the Corporation as an executrix, asking for an assignment of a claim against the estate of her testator, a transfer which would ordinarily work a merger of the claim, and be in effect a release ; a release is directed to be given, and whatever may be the form of the instrument in fact executed, it can only be valid so far as it coincides with the terms of the authority under which it was executed, and should with propriety be held as a quit-

claim or release merely, as the discharge of a claim which the creditor had in *foro conscientiæ*, been paid.

There is another view of this case which, independently of any of the grounds discussed, appears to me entirely conclusive in itself against the present application. Both parties here stand in a fiduciary capacity in relation to the estate. This is a continuing trust. (*Flinn* vs. *Chase*, 4 *Denio's R.*, 85.) The formal discharge contained in a decree on final accounting operates only as to the accounts of the parties up to that period. The trust is an enduring one ; other assets may be realized, new liabilities incurred, involving a continuance of duty and responsibility. A decree on final accounting does not destroy the relation of an executor, but only discharges him from liability for the past; and where, as in this case, a creditor does not take his share of the fund, but leaves it in the hands of the executor, the latter still continues to retain the fund in the capacity of an executor. The executor having by the decree been found to be in possession of assets, the character of the original claim is so far changed, as to make him personally liable for the amount out of his own property, but his character of executor is not lost. Even after a final accounting and a distribution, an executor continues to be a trustee. (*White* vs. *Swain*, 3 *Pickering's R.*, 365.) Mr. Kinney, therefore, still holds the fund as executor, and Mrs. Paff was still executrix of Joseph Delacroix, deceased, and indeed so styled herself, when she received the assignment of a decree against the estate of her testator. Now it cannot be that an executor shall in any way procure by purchase, or by voluntary transfer, without consideration, a claim against the estate he represents, for his own individual benefit. All such transactions must enure to the benefit of his *cestui que trust*. This rule of conscience established in equity, and applied to all trust relations with rigid severity, is in the present instance borne out by the letter of the law. The statute is explicit, that executors shall not make profit out of the estate.

2

(2 *R. S.*, *p.* 156. § 61. 3*d ed.*) Mrs. Paff having paid nothing for the assignment of this claim, the Corporation being ready and willing to assign it from having been in fact paid the debt, she representing herself as an executrix of the deceased debtor, a release having been directed to be executed instead of an assignment, all these facts taken in connection with the relation Mrs. Paff still occupies towards the estate, compel me to say that I can see no legal or equitable ground for enforcing the payment of the decree. If her application were allowed, upon the same principle executors and administrators might make merchandise of their trust, buy up the debts of the deceased, and speculate for their own benefit, thus perverting opportunities consequent upon occupying a fiduciary position, to purposes of individual gain. The application in this case, therefore, must be denied, and the petition dismissed.