## NEW YORK SUPERIOR COURT.

ALEXANDER ANNETT, administrator, &c., respondent, agt.
THOMAS KERR, and others, appellants.

Where an *administrator* has been removed on the application of his sureties, after
filing his account, and another administrator appointed in his place, the latter
administrator cannot bring an action upon the *bond* of the former in his *own
name* under the Code, as the real party in interest, to compel payment over of
the funds belonging to the estate in his hands. The action on the bond should
be prosecuted in the name of the *people*.

The *surrogate's decree* directing the assignment of the bond to the new adminis-
trator for the purpose of such prosecution, is without jurisdiction and *void*.

THIS was an action against the defendant Kerr, as
administrator of John Strahan, deceased, and his sureties,
on his bond to the people of the state, given on the issuing
of letters of administration to him in 1858.   It was con-
ditioned " faithfully to execute the trust reposed in such
administrator, and obey all orders of the surrogate of the
county of New York, touching the administration of the
decedent's estate."   In January, 1862, such administrator
applied to such surrogate finally to settle his account as
such, and after the issuing and service of a citation on the
parties interested, filed his account in April following.   In
June following (9th), exceptions were filed to such account
on behalf of the widow and next of kin of the decedent.
Some time between that time and the 13th of the same
month, but when does not appear by the case, the defend-
ant Kerr was removed as administrator, on the application
of his present co-defendants (Terry and Thompson), his
sureties on his bond.   At the last date the plaintiff was
appointed administrator in his place, and three days after-
wards (16th June), applied to such surrogate by petition,
to compel the defendant Kerr to render an account of his
proceedings as administrator, and show cause why the
assets in his hands as such, "should not be delivered over"

to the petitioner. In the beginning of July following, the attorneys for the plaintiff and the defendant Kerr, stipulated in writing to bring on the settlement of the matters involved in such petition on the 15th of that month, and the same attorneys with the attorney for a special guardian of one of the next of kin of the decedent, agreed to allow the account previously filed by such administrator in April, to stand as his account, and the exceptions filed thereto as exceptions of the next of kin and widow. A motion founded on such account and exceptions, for such decree as such surrogate might think proper to grant, noticed for the 16th of December following (1862), was made on the 15th of that month, without the presence of the defendant Kerr, or any one on his behalf. Such account as previously filed was then settled and adjusted by such surrogate, showing a balance in the hands of such defendant of upwards of eighteen hundred dollars. Such surrogate, by a decree containing such settlement as then made, ordered the defendant Kerr, after retaining a certain sum ($165.57) for his commissions, to pay him a certain sum ($54.50) for the costs and expenses of such proceeding, to the proctors for the special guardian before mentioned (Messrs. Mathews & Swan), a certain sum ($200), and a certain other sum to the proctor for the wife and daughter of the decedent $100) for their respective costs, and the residue, being a little above thirteen hundred dollars, to the plaintiff. Proof of the service of such notice of motion consisted only of the recital thereof in the decree so made by the surrogate. Such decree was docketed in the New York county clerk's office, and an execution issued thereon to the sheriff of the same county was returned unsatisfied. The surrogate of such county in January, 1863, ordered such administrator's bond to be assigned to "the said John P. Crosby and others, for the purpose of being prosecuted," and in April following, he jointly with Messrs. Mathews & Swan, and Crosby,

executed a formal assignment of such bond under seal to the plaintiff.

MATHEWS & SWAN, *for special guardian.*

By the court, ROBERTSON, C. J. The bond in this case being to the people of the state, no action could be brought upon it at law as a bond, except when authorized by such obligees, in other words, by statute or equivalent authority. In a proper equitable case an action might perhaps be maintained upon it as a stipulation or judicial recognizance (*Carow* agt. *Mowatt*, 2 *Edw. ch.* 57), but then only by the officer in whose hands it is deposited (*Bolton* agt. *Powell,* 14 *Beav.* 2 ; *De G. M. & G.* 1), although even that has been doubted (14 *Beav.* 290, 291).

The complaint in this action, however, shows only the case of a revocation of the letters of administration of the defendant Kerr (without stating the cause), a decree against him on an alleged final accounting, and the return of an execution on such decree after docketing it unsatisfied. It also alleges an assignment by such surrogate of such bond to the parties in whose favor such decree was made (of whom the plaintiff is one), and the second assignment of it by them to the plaintiff. No special equity is, therefore, presented by such a case. It would seem that before the passage of the Revised Statutes, an action could be brought upon such a bond whenever any of its conditions were violated by parties prejudiced thereby (*People* agt. *Dunlap*, 13 *J. R.* 437), but only in the name of the people.

The first question that arises, therefore, is whether the plaintiff can bring an action in his own name under the Code on such bond, as the real party in interest (§§ 111, 113). The former mode of entering up judgment in a suit on a bond for the penalty in case of a breach, to stand as security for future breaches being abolished, it is difficult to say how the sureties can avail themselves in future

Annett agt. Kerr.

actions for breaches of such bond, of their payment of any money recovered by the present plaintiff in this. It would seem, therefore, that the action should have been brought in the name of the people, so as to make the parties in each successive action the same, unless by statute or a surrogate's decree the plaintiff acquired such an interest in the bond as to entitle him to bring an action in his own name.

The statutes of this state have, however, provided for every contingency in which it might be necessary to prosecute an administrator's bond, and regulated the prior steps for instituting an action thereon. The mere fact of so prescribing cases for such prosecution, would seem by implication to deny the right in all others. Unless the provisions of the Revised Statutes giving to letters of administration issued after the revocation of prior ones for the evasion by the administrator of personal service of a summons to render an account, or his remaining imprisoned a certain time for not doing so (2 *R. S.* 92, § 53), " the like effect " as it gives to those issued after a like revocation for omitting to file an inventory or avoiding service of a summons to compel it, also thereby gives the right of prosecution on such bonds, such statutes only expressly allow such right in the latter case (2 *R. S.* 85, § 21). The right of recovery in such prosecution was by such latter provision extended to unliquidated damages for any injury to such estate by any act or omission of such removed administrator, besides the value of any property unadministered. The whole amount as recovered, was to be assets in the hands of the new administrator (*Id*). Probably on account of the restricted character of such provision, the legislature in the same year in which the Revised Statutes went into effect (1830), passed a law authorizing the surrogate to cause an administrator's bond to be prosecuted whenever he omitted to perform a decree for the payment of money, and to apply himself the moneys recovered to the

satisfaction of such decree (*Laws of* 1830, *ch.* 320, § 23), thus leaving the control of the proceedings with that officer. But such prosecution was still restricted to cases of decrees on rendering an account or a final settlement, or for debts, legacies or distributive shares (*Id*). But in 1837, the legislature gave a cumulative and more extended remedy (*People* agt. *Guild*, 4 *Denio*, 551), in every case of a surrogate's decree against an administrator for the payment of money. (*Laws of* 1837, *p.* 535, § 65; *Laws of* 1844, *p.* 90, §§ 1, 2.) But the party thereby allowed to prosecute such bond was required to have prior thereto, an execution upon such decree docketed in a county clerk's office, returned unsatisfied (*Id*). No such privilege was, however, given in either of the statutes of 1830 and 1837, merely upon a revocation, as was given by the Revised Statutes.

The right to prosecute such administrator's bonds at all in this case, if the statutory provisions just referred to are exclusive, as the surrogate's order is not sufficient unless based on proper proceedings (*People* agt. *Barnes*, 13 *Wend.* 92; *People* agt. *Corlies*, 1 *Sandf. R.* 228), must depend on the plaintiff's bringing it within the statutes of 1830 and 1837, since the revocation of the letters of the defendant Kerr does not appear to have been under the Revised Statutes, for omitting to render an account or to file an inventory, but by the recital of the statute of 1837 (*Ch.* 460, §§ 29 *to* 32), to have been on the application of sureties. This case does not come within the statute of 1830, before cited, because the decrees therein specified are only those upon rendering an account, a final settlement, or for a debt, legacy, or distributive share. And although a substituted administrator may call his predecessor to account (2 *R. S.* 95, § 68), extended by statute of 1837 (*Ch.* 460, § 36), yet such accounting is expressly excepted from the cases in which a surrogate is required to decree payment and distribution of assets on hand (*Id.* § 71), and appears to be only a means of discovery of the disposition of the

assets as in case of a creditor (*Id.* § 68; 2 *R. S.* 92, § 54), and merely auxiliary to some future proceeding, either by action on the bond, or a new application under the Revised Statutes (*vol.* 2, *p.* 92, § 52), by parties interested for a final account. Unless, therefore, the surrogate derived his authority to decree a payment by the defendant Kerr, of the assets in his hands to the plaintiff, from some other source than the right of the latter to an account, the decree was extra jurisdictional. Such case is in that event, equally without the statute of 1837. The sureties can only be made liable for the disobedience of the administrator to lawful orders of the surrogate.

But if the bond in this case could legally be prosecuted, the next question which arises is whether the plaintiff could prosecute it in his own name. That he could do only by some common law or statutory right, or the creation of an interest in him, either by the surrogate's decree or otherwise, entitling him to administer or retain the amount recovered (*Code,* § 111). I have already shown he had no such right, and the assignment spoken of in the statute of 1837, could not have been intended to divest the people of the state of their ownership of such bond, but only to give a right of suing thereon. The creation of such interest depends entirely upon the decree in question, legally bringing this case within the statute of 1837, as one for the payment of money. The validity of that decree, therefore, necessarily becomes a matter of inquiry. It would be a necessary subject of such investigation, notwithstanding the bond was free to be prosecuted, and in the name of the plaintiff, because the admissibility of such decree as evidence (conclusive or otherwise) is raised by the objection thereto, and the offer of evidence on the trial of this case to prove it erroneous. In actions under the statute of 1830 and 1837, before mentioned, the amount of the unpaid decree must be the measure of the recovery. In one under the provisions of the Revised Statutes, in case of a removal

Annett agt. Kerr.

of an administrator for not rendering an account or filing an inventory, the amount of recovery is left entirely open for inquiry in the court in which the action is brought. Unless the surrogate had jurisdiction, on an application by a substituted administrator for a final account by his predecessor, to compel the latter to pay over what was found in his hands, he clearly had none to determine the amount unless it was part of his general jurisdiction, or incidental to some branch thereof.

The jurisdiction of the surrogate's court, which is a creature of statutes, is essentially special and limited, both in the subjects over which it is exercised, and the mode of its exercise when that is prescribed (*Sheedon* agt. *Wright*, 5 *N. Y. R.* 197; *S. C.* 7 *Barb.* 39; *People* agt. *Barnes*, 12 *Wend.* 492; *Corwin* agt. *Merritt*, 3 *Barb.* 41; *Paff* agt. *Kinney*, 1 *Bradf.* 1; *Cleveland* agt. *Whitton*, 31 *Barb.* 544; *Farnsworth* agt. *Oliphant*, 19 *Id.* 30), and that too, notwithstanding the restriction upon the exercise of incidental powers imposed by the Revised Statutes (2 *R. S.* 221, § 1), has been removed. (*Laws of* 1837, *ch.* 460, § 71; *Sipperly* agt. *Baucus*, 24 *N. Y.* 46.) It is only, therefore, in case of the enforcement of the delivery by a removed administrator, of assets in his hands to his successor, being either a specially delegated power of a surrogate, or necessarily incidental to one, that he would have jurisdiction to make a decree such as that in question, so as to bind sureties on the bond.

The Revised Statutes confer on the courts held by surrogates, judicial power over eight enumerated subjects, which they declare are to be exercised in the cases and manner prescribed by the statutes of this state (2 *R. S.* 220, § 1), none of them except the third, fourth and sixth, having relation to an administrator's accounts or conduct, as they only relate to proving wills, granting letters, selling real estate, guardians and dower; such third and fourth thereof, however, are " to direct and control the conduct,

and settle the accounts of executors and administrators," and "enforce the payment of debts and legacies, and the distribution of the estates of intestates."

The eighth is of the most vague and indefinite, as well as general kind. "To administer justice in all matters relating to the affairs of deceased persons," which, however, as well as the authority to direct and control administrators, is after all, expressly limited to the cases and manner prescribed by statute (*Id*). If recourse be had to prior statutes of the state regulating the jurisdiction of surrogates, passed from 1787 to 1828, the powers thereby granted will be found to be, as they are ably summed up in the elaborate opinion of the acting surrogate *In re Brick's estate* (15 *Abb.* 12), comprised under thirteen heads. These include, besides those enumerated in the Revised Statutes and incidental powers, four others, to wit: 1. Taking oaths to accounts and inventories of executors and administrators. 2. Recording wills and other documents, and orders. 3. Investigating the disposition of the personal estate of decedents by strangers. 4. Compelling the production of documents and attendance of witnesses.

The enforcement of the delivery by a removed administrator, to his successor, of assets in his hands, cannot be said to be incidental to any of such enumerated powers. Such delivery would not facilitate, but if anything, rather impede the payment of debts and legacies, or a distribution while yet unascertained. If decreed, any payment of them could only be partial and inconsistent with a final accounting on the application of other parties interested. It would be unjust to deprive administrators or executors of their commissions when removed, for no fault but at the will of their sureties (*Laws of* 1837, *ch.* 460, §§ 29, 32, 33), and it would be equally unjust to deprive their successors of commissions for taking charge of the same fund, or to charge the estate with double commissions on it. Such litigation between the new and the old administrator would

settle nothing as between the latter and creditors, legatees or next of kin, either as to the amount due or freedom from all liability.

The new administrator may have a right to know how much of the estate is in the hands of his predecessor, in order to provide for debts and legacies on a final distribution, or for contingencies affecting the estate ; but to order the payment to him in order that he may distribute it, is unnecessarily multiplying proceedings.   All parties interested in the estate as creditors, legatees or next of kin, have a right to summon a removed administrator to account, and procure a decree against him, which, if unsatisfied, could be enforced in a suit on the bond.   In case of a removal of an administrator for not filing an inventory, or for not rendering an account, it is very evident the statute does not contemplate a prior decision by the surrogate, since the extent of the recovery is designated.   That such enforcement of a delivery of assets was not in this case incidental to the exercise of any enumerated power of the surrogate's court, is evident from the surrogate's failure to exercise any such power.   The account of the defendant Kerr, as administrator, was not settled as regarded any creditor, legatee or next of kin.   No debt or legacy was ordered to be paid, nor were the assets in his hands distributed.   Such decree, therefore, so far as it ordered payment by the defendant Kerr, to the plaintiff, was void for want of jurisdiction.

If the account rendered by the defendant had been a final accounting, as it might have been if it had been made upon his application (2 R. S. 95, § 69), it would only have been conclusive of four facts (2 R. S. 94, § 65), to wit : 1. The correctness of the charges in it for moneys paid to creditors, legatees and next of kin, and for necessary expenses.   2. The extent of the liability of such defendant for interest.   3. The limit of the ability to collect debts stated in such account.   4. The correctness for allowances

for decrease, and charges for increase in value of assets. As these are mostly in favor of the accounting party, it is evident that for other purposes, the settlement in the decree determines nothing as to the quality or value of assets collected or received, or the liability of the administrator for losses, which was therefore entirely open for new evidence. The plaintiff was bound to prove them, and the defendants entitled to introduce contradictory evidence.

Even, therefore, if the bond could have been prosecuted, and by the plaintiff in his own name, I am satisfied it was error not to have dismissed the complaint for want of sufficient evidence of the amount for which the defendant Kerr was responsible, and that evidence of payments by him to the next of kin and losses of money, should have been admitted; also, that the defendant Kerr was entitled to his wife's share. For these reasons, independently of the right to prosecute the bond, or bring this action in the plaintiff's name, I think there should be a new trial, with costs to abide the event. The plaintiff will then have an opportunity to apply to amend his complaint, if so advised, so as to make the case one of equitable cognizance, if it can be made so.

The judgment must therefore be reversed and a new trial had, with costs to abide the event.