By the Court,
Robertson, Ch. J.
The bond in suit in this case being to the people of the state, no action could be brought upon it, at law, as a bond, except when authorized by such obligees, in other words, by statute, or equivalent authority. In a proper equitable case an action might, perhaps, be maintained upon it as a stipulation or judicial recognizance, (Carow v. Mowatt, 2 Edw. Ch. 57,) but then only by the officer in whose hands it is deposited. (Bolton v. Powell, 14 Beav. 275. 2 De G., M. & G. 1.) Although even that has been doubted. (14 Beav. 290, 291.) The complaint in this action, however, shows only the case of a revocation of the letters of administration of the defendant Kerr, (without stating the cause,) a decree against him on an alleged final accounting, and the *564 return of an execution on such decree, after docketing, unsatisfied. It also alleges an assignment, by the surrogate, of such .bond to the parties in whose favor such decree was made, (of whom the plaintiff is one,) and the second assignment of it by them to the plaintiff. No special equity is therefore presented by such a case.
It would seem that before the passage of the Revised Statutes, an action could be brought upon such a bond whenever any of its conditions were violated, by parties prejudiced thereby, (People v. Dunlap, 13 John. 437,) but only in the name of the people. The first question that presents itself, therefore, is, whether the plaintiff can bring an action in his own name, under the Code, on such bond, as the real party in interest. (§§ 111, 113.) The former mode of entering up judgment in a suit on a bond, for the penalty, in case of a breach, to stand as security for future breaches, being abolished, it is difficult to say how the sureties can avail themselves, in future actions for breaches of such bond, of their payment of any money recovered by the present plaintiff in this. It would seem, therefore, that the action should have been brought in the name of the people, so as to make the parties in each successive action the same, unless by statute or a surrogate’s decree the plaintiff acquired such an interest in the bond, as to entitle him to bring an action in his own name.
The statutes of this state have, however, provided for every contingency in which it might be necessary to prosecute an administrator’s bond, and regulated the prior steps for instituting an action thereon. The mere fact of so prescribing cases for such prosecution would seem, by implication, to deny the right in all others. Unless the provision of the Revised Statutes which gives to letters of administration, issued after the revocation of prior ones for the evasion by the administrator of personal service of a summons to render an account, or his remaining imprisoned a certain time for not doing so, (2 R. S. 92, § 53,) the like effect as it gives to those issued after a like revocation for. omitting to file an inventory or avoiding service of a summons to compel it, also thereby gives the right of *565 prosecution on such bond, such statutes expressly allow such right only in the latter case. (2 R. S. 85, §21.) The right of recovery in such prosecution was by such latter provision extended to unliquidated damages for any injury to such estate by any act or omission of such removed administrator, besides the value of any property unadministered. The whole amount so recovered was to be assets in the hands of the new administrator. (Id.) Probably on account of the restricted character of such provision the legislature, the same year in which the Revised Statutes went into effect, (1830,) passed a law authorizing a surrogate to cause an administrator's bond to he prosecuted whenever he omitted to perform a decree for the payment of money, and to apply himself the moneys recovered to the satisfaction of such decree, (Laws of 1830, p. 570, ch. 320, § 23,) thus leaving the control of the proceedings with that officer. But such prosecution was still restricted to cases of decrees on rendering an account, or a final settlement or for debts, legacies or distributive shares. (Id.) But in 1837 the legislature gave accumulative and more extended remedy, (People v. Guild, 4 Denio, 551,) in every case of a surrogate’s decree against an administrator for the payment of money. (Laws of 1837, p. 535, § 65. Id. of 1844, p. 90, §§ 1,2.) But the party thereby allowed to prosecute such bond was required to have prior thereto an execution upon such decree docketed in a county clerk’s office returned unsatisfied. (Id.) No such privilege was, however, given in either of the statutes of 1830 or 1837, merely upon a revocation, as was given by the Revised Statutes. The right to prosecute such administrator’s bond at all in this case, if the statutory provisions just referred to, (People v. Corlies, 1 Sandf. 228,) are exclusive, (as the surrogate’s order is not sufficient unless based on proper proceedings, (People v. Barnes, 12 Wend. 492,) must depend on the plaintiff’s bringing it within the statutes of 1830 and 1837, since the revocation of the letters of the defendant Kerr does not appear to have been under the Revised Statutes, for omitting to render an account or file an inventory, but, by the recital in the decree, under the statute *566 of 1837, (c/z.-460, §§29 to 32,) to have been on the application of sureties.
This case does not come within the statute of 1830, before, cited, because the decrees therein specified are only those upon rendering an account, a final settlement, or for a debt, legacy or distributive share. And although a substituted administrator may call his predecessor to account, (2 R. S. 95, § 68, extended by statute of 1837, ch. 460, § 36,) yet such accounting is expressly excepted from the cases itít which a surrogate is required to decree payment and distribution of assets on hand, (id. § 71,) and appears to be only a means of discovery of the disposition of the assets, as in case of a creditor, (id. § 86, 2 R. S. 92, § 54,) and merely auxiliary to some future proceeding, either by action on.the bond or a new application under the Revised Statutes, (vol. 2,p. 92, § 52,) by parties interested, for a final account. Unless, therefore, the surrogate derived his authority to decree a payment by the defendant Kerr of the assets in his hands to the plaintiff from some other source than the right of the latter to an account, the decree was extra .jurisdictional. Such case is in that event equally without the statute of 1837. The sureties can only be made liable for the disobedience of the administrator to lawful orders of the surrogate.
But if the bond in this case could legally be prosecuted, .the .next question which arises is, whether the plaintiff could prosecute it in his own name. That he could only do by some common law or statutory right, or the creation of an interest in him, either by the surrogate’s decree or otherwise, entitling him to administer or retain the amount recovered. (Code, § 111.) I have already shown he had no such right, and the assignment spoken of in the statute of 1837, could not have been intended to divest the people of the state of the ownership of such bond, but only gives a right of sueing thereon.' The creation of such interest depends entirely upon the decree in question legally bringing this case within the statute of' 1837, as one for the payment of money. The validity of that decree, therefore, necessarily becomes a matter of inquiry. ■ It *567 would be a necessary subject of such investigation, notwithstanding the bond was one to be prosecuted, and in the name of the plaintiff, because the admissibility of such decree as evidence (conclusive or otherwise) is raised by the objection thereto, and the offer of evidence on the trial of this case to prove it erroneous. In actions under the statutes of 1830 and 1837, before mentioned, the amount of the unpaid decree must be the measure of the recovery.. In one under the provisions of the Revised Statutes, in case of a removal of an administrator for not rendering an account or filing an inventory, the amount of recovery is left entirely open for inquiry in the court in which the action is brought. Unless the surrogate had jurisdiction on an application by a substituted administrator for a final account by his predecessor to compel the latter to pay over what was found in his hands, he clearly had none to determine the amount, unless it was part of his general jurisdiction, or incidental to some branch thereof
The jurisdiction of the surrogate’s court,- which is a creature of statutes, is essentially special and limited’ both in the subjects over which it is exercised and the mode of its exercise, when that is prescribed. (Sheldon v. Wright, 5 N. Y. Rep. 497; S. C. 7 Barb. 39. People v. Barnes, 12 Wend. 492. Corwin v. Merritt, 3 Barb. 341. Paff v. Kinney, 1 Bradf. 1. Cleveland v. Whiton, 31 Barb. 544. Farnsworth v. Oliphant, 19 id. 30.) And that, too, notwithstanding the restriction upon the exercise of incidental powers imposed by the Revised Statutes (2 R. S. 221, § 1,) has been removed. (Laws of 1837, ch. 460, § 71. Sipperly v. Baucus, 24 N. Y. Rep. 46.) It is only, therefore, in case of the enforcement of the delivery by a removed administrator of assets in his hands to his successor, being either a specially delegated power of a surrogate, or necessarily incidental to one, that he would have jurisdiction to make a decree such as that in question, so as to bind sureties on the bond.
The Revised Statutes confer on the courts held by surrogates judicial power over eight enumerated subjects, which they declare are to be exercised in the cases and manner prescribed by *568 the statutes of this state, (2 R. S. 220, § 1,) none of them, except the third, fourth and sixth, have any relation to an administrator’s accounts or conduct, as they only relate to proving wills, granting letters, selling real estate, guardians and dower. Such third and fourth thereof, however, are “To direct and control the conduct, and settle the accounts of executors and administrators,” and “ enforce the payment of debts and legacies and the distribution of the estates of the intestates.” The eighth is of the most vague and indefinite as well as general kind, “To administer justice in all matters relating to the affairs of deceased persons,” which, however, as well as the authority to direct and control administrators, is after all expressly limited to the cases and manner prescribed by statute. (Id.) If recourse be had to prior statutes of the state regulating the jurisdiction of surrogates, passed from 17.87 to 1828, the powers thereby granted will be found to be, as they are ably summed up in the elaborate opinion of the acting surrogate, in Re Bride’s estate, (15 Abb. 12,) comprised under thirteen heads. Those include, besides those enumerated in the Revised Statutes and incidental powers, four others, to wit: 1. Taking oaths to accounts and inventories of executors and administrators. 2. Recording wills and other documents and orders. 3. Investigating the disposition of the personal estate of decedents, by strangers. 4. Compelling the production of documents and attendance of witnesses.
The enforcement of the delivery by a removed administrator to his successor, of assets in his hands, cannot be said to be incidental to any of such enumerated powers. Such delivery would not facilitate, but if any thing rather impede, the payment of debts and legacies, or a distribution while yet unacertained. If decreed, any payment of them could only be partial and inconsistent with a final accounting on the application of other parties interested. It would be unjust to deprive executors or administrators of their commissions when removed for no fault, but at the will of their sureties, (Laws of 1837, ch. 460, §§ 29, 32, 33 ;) and it would be equally unjust to deprive their successors of commissions for taking charge of the *569 game fund, or to charge the estate with double commissions on it. Such litigation between the new and the old administrator would settle nothing as between the latter and creditors, legatees or next of kin, either as to the amount due, or freedom from all liability. The new administrator may have a right to know how much of the estate is in the hands of his predecessor, in order to provide for debts and legacies on a final distribution, or for contingencies affecting the estate, but to order the payment to him in order that he may distribute it, is unnecessarily multiplying proceedings. All parties interested in the estate as creditors, legatees or next of kin, have a right to summon a removed administrator to account, and procure a decree against him, which, if unsatisfied, could be enforced in a suit on the bond. In case of a removal of an administrator for not filing an inventory, or for not rendering an account, it is very evident the statute does not contemplate a prior decision by the surrogate, since the extent of the recovery is designated. That such enforcement of a delivery of assets was not in this case incidental to the exercise of any enumerated power of the surrogate’s court, is evident from the surrogate’s failure to exercise any such power. The account of the defendant Kerr, as administrator, was not settled as regarded any creditor, legatee or next of kin; no debt or legacy was ordered to be paid, nor were the assets in his hands distributed. Such decree, therefore, so far as it ordered payment by the defendant Kerr, to the plaintiff, was void for want of jurisdiction.
If the account rendered by the defendant Kerr had been a final accounting, as it might have been, if it had been made upon his application, (2 R. S. 95, § 69,) it would only have been conclusive of four facts, (2 R. S. 94, § 65,) to wit: 1. The correctness of the charges in it for moneys paid to creditors, legatees and next of kin, and for necessary expenses. 2. The extent of the liability of such defendant for interest. 3. The limit of the ability to collect debts stated in such account. 4. The correctness of the allowances for decrease and charges for increase in value of assets. As these are mostly in favor of the accounting party, it is evident that, for other purposes, *570 the settlement in the decree determined nothing as to the quantity or value of assets collected or received, or the liability of the' administrator for losses, which was therefore entirely open for new evidence. The plaintiff was bound to prove them, and the defendants were entitled to introduce contradictory evidence.
Even, therefore, if the bond could have been prosecuted, and by the plaintiff in his own name, I am satisfied it was error not to have dismissed the complaint for want of sufficient evidence of the amount for which the defendant Kerr was responsible, and that evidence of payments by him to the next of kin, and losses of money, should have been admitted.; also, that the defendant" Kerr was entitled to his wife’s share. For these reasons, independently of the right to prosecute the bond, or bring the action in the plaintiff’s name, I think there should be a new trial, with costs to abide the event. The plaintiff will then have an opportunity to apply to amend his com.plaint, if so advised, so as to make the case one of equitable cognizance, if it can be made so.
The judgment must therefore be reversed, and a new trial had, with costs to abide the event.

) The judgment in this case was affirmed in the Court of Appeals, (35 N. Y. Rep. 256.)